Gary Wayne Joseph BASLER,
Respondent,

v.

Mary Beth BASLER, n/k/a Mary
Beth Lumpkin, Appellant.

No. 65638.

Missouri Court of Appeals,
Eastern District,
Division One.

Dec. 27, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 31, 1995.

Application to Transfer Denied
March 21, 1995.

Deborah Jean Tomich, St. Charles, for appellant.

Herbert A. Kasten, Jr., St. Louis, for respondent.

GARY M. GAERTNER, Judge.

Appellant, Mary Beth Lumpkin ("mother"), appeals from an order of the Circuit Court of the County of Ste. Genevieve modifying the parties' decree of dissolution and transferring primary custody of the parties' two minor children from mother to respondent, Gary Wayne Joseph Basler ("father"). We reverse.

The parties were married on November 5, 1977. On January 20, 1987, a decree of dissolution was entered in the Circuit Court of the County of Ste. Genevieve. The decree incorporates the separation agreement of the parties, wherein it was agreed mother would maintain primary physical custody of the minor daughter, B.B., and the minor son, D.B.,

during the school year, and father would gain primary physical custody of both children during the summer. The parties agreed to visitation by the noncustodial parent on alternate weekends and alternate holidays. Additionally, it was agreed father would pay mother $90.00 per child per month in child support for the nine months the children were in mother's primary custody. Finally, paragraph 8 of the separation agreement states in pertinent part: "The parties further agree that a move by either parent to a point outside of Ste. Genevieve [sic] St. Francois County [sic] or Cape Girardeau County [sic] Missouri, shall constitute a sufficient change of circumstances to allow the Court to consider modifying these provisions regarding custody."

In July, 1991, father filed a motion to modify the dissolution decree as to child custody. After a hearing on the motion, the court entered an order in November, 1991, finding no change of circumstances sufficient to warrant a change in custody.

In the spring of 1993, mother informed father she intended to move to Fulton, Missouri to reside with the man she was planning to marry. She planned to move B.B., D.B., and her two younger sons, D.S. and J.S.—her children by a boyfriend subsequent to her divorce from father—with her.

In August, 1993, father contacted mother and informed her B.B. and D.B. wanted to stay with him and attend school in Ste. Genevieve that year. Mother acquiesced, but told father she wanted the children to return to Fulton for the two weeks prior to the start of the school year so she could visit with them. Upon their return at the end of the summer, B.B. told mother she wanted to stay with mother in Fulton. D.B. stayed the two weeks, then moved to Ste. Genevieve. Shortly thereafter, father filed a motion to modify the dissolution decree, requesting primary custody of both B.B. and D.B.

A hearing was held on December 9, 1993. On January 31, 1994, the court issued its findings of fact, conclusions of law and order of modification of the decree of dissolution. The court found a change of circumstances

sufficient to sustain father's motion and transfer primary custody of B.B. and D.B. from mother to father. In addition, mother was ordered to pay child support of $320.00 per child per month for the nine months the children resided with father. This appeal ensued.[1]

Mother raises one point on appeal. She contends the trial court erred in modifying the custody decree and transferring primary custody of B.B. and D.B. to father. She argues there was no evidence of a substantial and continuing change in circumstances sufficient to justify the transfer of custody.

■■■ We are governed here by the oft-cited principles of *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). We will affirm the judgment of the trial court if it is based upon substantial evidence, if it is not against the weight of the evidence, and if it is not based upon an erroneous interpretation or application of the law. *Id.* at 32. We acknowledge that in child custody matters, the decision of the trial court is given greater deference than in other cases. *Wilson v. Wilson*, 873 S.W.2d 667, 670 (Mo.App.E.D. 1994). Once custody has been originally adjudicated, there is a presumption the parent with custody remains suitable. *Id.* It is the responsibility of the parent requesting the change of custody to establish a change in circumstances of the child or custodial parent which is so significant as to directly affect the welfare of the child and warrant a change of custody. *Id.*

■■■ We find the record fails to support the trial court's decision to transfer custody from mother to father. There was evidence that since the divorce, mother moved several times, requiring her children to change schools. However, all of the moves, until the move in the spring of 1993, resulted in residence in southeast Missouri. It was only mother's most recent move which took her from southeast Missouri toward central Missouri. Although the parties' separation agreement and, ultimately, the decree included the provision whereby a move by either party outside a three-county area could justify a change of custody, on the facts before us

---

1. Additional facts will be developed as needed.

we do not view mother's move as a change of circumstances sufficient enough to warrant a change of custody.

We first note that although RSMo § 452.411 (Supp.1994) identifies a change of residence from one state to another as a change of circumstances which could support a court's modification of a prior custody decree, nowhere is it indicated that a change from one Missouri county to another warrants the same or a similar result. In addition, this court has noted that "modern transportation, lifestyles, attitudes and improved enforcement of divorce decrees under the uniform laws have resulted in relaxation of the rather rigid standards of the past [associated with a custodial parent's attempt to move from this jurisdiction]." *Koenig v. Koenig,* 782 S.W.2d 86, 89 (Mo.App.E.D. 1989). Factors the court has considered in the past when determining whether a motion to remove a child from Missouri should be granted are: the length of the acquaintance between mother and her new husband; the extent of the discussion as to where the child will live and other living arrangements; and the extent of testimony as to the child's relationship with the new step-father and his family. *Wilson,* 873 S.W.2d at 670. Notwithstanding the fact that mother's move was not even out of the state, we also find a consideration of these factors supports mother's continued custody of the children.

Although the record is unclear as to how long mother and Russ, her current husband and the step-father of B.B., D.B., D.S. and J.S., knew each other, mother testified they decided to marry in January of 1993. They eventually did marry in October of that same year and were married at the time of the hearing in December of 1993. It is obvious from this evidence that mother and Russ knew each other for a minimum of one year by the time of the hearing and had actually been married for two months at that point. Based on this length of time, it is apparent there is stability to this relationship.

Regarding the residence and other living arrangements, mother testified she and Russ own a "four-bedroom Cape Cod with a living room, dining room, a kitchen, and an attached ... two-car garage ... [on] [t]wo and

a half or three acres" in Fulton, Missouri. There was testimony that mother, Russ, B.B., D.S. and J.S. lived there on a permanent basis, and D.B., as well as Russ' two children from a previous marriage, were there periodically for visitation. When questioned about living in Fulton, D.B. testified he liked living there "[a] little," and the thing he did not like about it was that they "didn't do anything." B.B. testified that although she did not want to move to Fulton, now that she is there she likes it.

Again, the record supports the fact that mother and her new husband had a home large enough to accommodate the children and step-children. The home was situated on a substantial piece of land, providing plenty of running space for the children. D.B. voiced no real complaints or concerns about the residence or living arrangements. B.B. admitted she would like to remain with mother.

Regarding the third factor, when D.B. was questioned as to whether he liked Russ and liked living with him, D.B. admitted: "kind of." He did indicate he sometimes had problems with Russ. B.B. testified that although she does not approve of the way Russ disciplines D.S. and J.S., she gets along pretty well with him. She went on to voice her concern that when Russ' children are around, they get away with misbehaving easier than D.B. can.

We find the overall record supports the fact that B.B. and D.B. have a reasonably good relationship with Russ as neither voiced any real or substantial complaints about him. When specifically questioned about their feelings for Russ, D.B. said he "kind of" liked Russ, and B.B. indicated she got along with him pretty well. This court would surmise that adjustments to new disciplining styles and concerns regarding favoritism abound when step-parents and step-children enter the scene. We find no support for the trial court's action based upon the limited concerns expressed here by the children. As such, a consideration of the above-listed factors does not support a change of custody at this time.

Additional evidence adduced at the hearing established that B.B., who was 14 at the time of the hearing, has adapted well to living in

Fulton. She is making A's and B's in school, she was student of the month in one of her first months in Fulton, she plays the clarinet in the school band, and she plans to try out for the volleyball team during the next school year. In addition, B.B. indicated she has made friends in Fulton. When questioned as to where she would prefer to live, she stated a preference for remaining with mother in Fulton. She also told the court she loves D.B., D.S. and J.S., and although she sees D.B. every weekend, that is not as much as she would like.[2]

B.B. acknowledged she is responsible for babysitting D.S. and J.S. on occasion when mother and Russ are working. At times she has to cook meals for the boys. However, she also indicated her babysitting responsibilities do not interfere with other things she likes to do. In payment for helping out around the house, B.B. has her own room in a loft of the house with a separate entrance; she has a T.V., a stereo, and she earns $50.00 every two weeks.

D.B. testified he would be happier living with father because "we go places and go hunting and everything." He established his love for mother and father, B.B., D.S. and J.S., and he testified that though he would rather be with father in Ste. Genevieve, it would be okay to live in Fulton if that was what the judge decided. D.B. stated he makes mainly A's and B's in school. He participated in wrestling at school and hoped to play baseball that summer.

Father testified he resides in Ste. Genevieve. He lives with his girlfriend and her 15 year old daughter. He works 7:00 a.m. to 3:00 p.m. Monday through Friday—and an occasional Saturday—at Mississippi Lime, where he has worked for 19 years. He indicated that because B.B. and D.B. have been together all of their lives, it is in their best interests to continue living together. He suggested the weekend visitation is difficult because of the two and one half to three hour drive every Friday and Sunday to pick up and drop off the visiting child.

Mother works as a nurse at a hospital in Jefferson City. She works nights every oth-er weekend and an occasional day during the week, if called. She also maintains per diem status with a hospital in Cape Girardeau, Missouri. Mother works two days every six weeks in Cape Girardeau in order to become vested in her retirement plan. She testified she planned to quit the job in Cape Girardeau at the end of the year upon becoming vested. Mother admitted that B.B. babysat for her younger brothers while mother and Russ were working, but this happened only occasionally.

Mother explained that when she and Russ decided to marry, he looked for work around Cape Girardeau. However, in order to take a job there, Russ would have had to take a substantial cut in pay. Mother, on the other hand, was able to secure a job near Fulton making a salary comparable to that she received in Cape Girardeau. This was the reason she made the move to Fulton.

Mother admitted she had agreed to allow D.B. to spend the school year with father and that B.B. could do the same if that made B.B. happy. However, she also testified she thought it would be in her childrens' best interests to remain with her.

In its ruling, the trial court stated that though both parents loved the children, it would be in the best interests of the children to be with father during the school year and with mother during the summer. The court found:

> there have been changed circumstances of the children and their custodians so substantial and continuing that the best interest [sic] of the children require a modification of the custody terms of the original Decree, those changes including, without limitation, the following:
>
> a) Respondent has remarried and moved herself and the children to reside in Fulton, Missouri; and
>
> b) in August, 1993, Respondent allowed the minor child, [D.B.], to live with Petitioner during the school year, and [D.B.] is now enrolled and attending school in Ste. Genevieve.

■ As previously discussed, mother's move from southeast Missouri to Fulton does

2. We commend mother and father for their efforts in this regard. Despite the difficulty of this situation, our reading of the transcript indicates both parents work diligently to see to it the children have substantial visitation with each other and with each parent.

not justify a change of custody. Also, despite the fact mother allowed D.B. to stay with father during the 1993/94 school year, mother never relinquished legal custody of D.B. *See Hoefer v. Hoefer,* 860 S.W.2d 376, 378 (Mo.App.W.D.1993). We recognize too, that D.B. testified he would rather reside with father. While the wishes of the child regarding his custody are taken into consideration, they are not controlling, as such an important decision "should not be allowed to turn upon the temporary whims or desires of a child." *D.S.P. v. R.E.P.,* 800 S.W.2d 766, 770 (Mo.App.E.D.1990). The weight to be given to such expressions depends upon the intelligence and maturity of the child and the basis for his expressed preference. *Id.* We do not find a nine year old's expressed desire to remain with father to "go places and go hunting and everything" sufficient to justify changing the custody arrangement for him and his 14 year old sister. Point granted.

Based on the foregoing, we reverse the decision of the circuit court and reinstate the provisions of the original decree.

REINHARD, P.J., and CRAHAN, J., concur.