John Earl SENCIBOY, Appellant and Cross–Respondent,

v.

Julie Kay (Senciboy) THORPE, Respondent and Cross– Appellant.

Nos. WD 52412, WD 52450.

Missouri Court of Appeals, Western District.

June 24, 1997.

J.D. Gorham, Richmond, for appellant.

Thomas C. Fincham, Kansas City, for respondent.

Before BERREY P.J., and SPINDEN and SMART, JJ.

BERREY, Judge.

This appeal concerns the denial of appellant John Earl Senciboy's motion to modify a decree of dissolution regarding child custody. We affirm.

Appellant and respondent Julie Kay Thorpe were married on December 28, 1985. On January 3, 1987, the couple's only child, a son named Blake, was born. The Ray County Circuit Court entered a decree of dissolution on October 26, 1989. The decree awarded respondent custody of Blake and granted appellant reasonable visitation. The decree further ordered appellant to pay $180 for and as monthly child support.

On January 4, 1994, appellant filed his motion to modify and requested that custody of Blake be transferred to him. Appellant also sought to give respondent reasonable visitation rights and indicated that he did not require child support from respondent. Respondent later filed a cross-motion seeking increased child support and an award of attorney fees.

Appellant is a high school graduate. He is employed full-time as a construction laborer and his work is concentrated during warm weather. If work is too slow during cold weather he receives unemployment compensation, a practice common in the construction industry. He has remarried and lives with his wife, Teresa, in Orrick, Missouri. Tere-

sa's two teen-aged children from a previous marriage reside with them. Teresa's daughter's son, Brandon, and his father, Anthony, also live with appellant. Teresa does not work outside the home. She receives child support for her teen-aged children, but the child support does not cover all of her support-related expenses.

Respondent did not complete high school. She works full-time at a fast food restaurant in Rolla, Missouri. Her sister-in-law and a neighbor provide child care for Blake while she is at work. After the divorce in 1989 and until trial in 1995, respondent, along with Blake, resided at nine different addresses. They resided at one address in Rolla for four years immediately following the divorce. Thereafter, they moved frequently, staying at a particular address for periods ranging from three weeks to eleven months. Most of these moves were within Rolla.

During this time, respondent has had relationships with several men who stayed overnight. Blake was at home during some of these overnights. Respondent married one of these men, Max Thorpe, on June 3, 1994. They were divorced five or six months later. Blake knew and interacted with Mr. Thorpe and all but one of the other men respondent dated. On July 8, 1995, respondent gave birth to Blake's half-brother, Brendon. Brendon's father, Dale Letz, does not support his son.

Blake has attended three elementary schools. He started kindergarten in Wentzville, Missouri and then was transferred to Mark Twain Elementary School in Rolla. He attended Truman Elementary School in Rolla for first grade and Mark Twain for second grade. Despite respondent's frequent address changes, Blake has transferred schools during the school year only once and that occurred when he was in kindergarten.

At the time of trial, Blake was attending third grade at Truman Elementary School. Blake's teacher, Kelly Carter, testified regarding Blake's behavior and academic performance during elementary school. She stated that Blake behaved "pretty good" and received good grades in first grade. In second grade, however, Blake's school work declined in several subjects and he scored low on a standardized test. So far in third grade Blake has exhibited behavioral problems, including emotional outbursts on some days. However, his teacher stated that he is "very easy to work with" and that his behavior has improved since the beginning of the school year. Although he still struggles with his school work and has shown signs of attention deficit disorder, a remedial reading class has helped him. Blake's teacher further stated that she has considered holding him back to repeat third grade. However, she also acknowledged that Blake's problems have coincided with the instant custody action.

Respondent has attended parent-teacher conferences with all of Blake's teachers and is aware of his behavioral and academic problems. She has attempted to remedy these problems by reading to Blake, talking with him and his teacher and not permitting him to watch television until his homework is done. Blake's teacher and appellant have suggested that Blake would benefit from speaking with a counselor. Respondent agrees, but is unable to afford it.

The trial court entered its order overruling appellant's motion to modify custody. The court's order, however, did award appellant expanded summer visitation rights. Respondent's cross-motion was sustained, increasing appellant's monthly child support to $463.74.[1] This amount included an abatement for the one and one-half months Blake spends with appellant in the summer. The order further directed appellant to pay respondent $3,000 for partial attorney's fees. Finally, the court ordered respondent not to have any "overnight male guests (other than family members) in her home while the minor child is present."

As this is a court-tried case, we will affirm the judgment of the trial court unless

---

1. The trial court's original order increased appellant's monthly child support to $463.75. Following a Joint Application for Order *Nunc Pro Tunc,* this amount was corrected to the sum of $463.74.

Child support was increased due to appellant's increase in income since the decree of dissolution.

there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Guier v. Guier*, 918 S.W.2d 940, 946 (Mo.App.1996). In matters involving child custody, an appellate court will give greater deference to the trial court's judgment than in other cases. *Id.* In addition, a trial court's child custody determination is presumed to have been done in the best interests of the child. *Taylor v. Taylor*, 908 S.W.2d 361, 365 (Mo.App.1995).

Appellant contends the trial court erred in overruling his motion to modify because the court's action is against the weight of the evidence, erroneously applies the law the facts and constitutes an abuse of discretion. More specifically, appellant argues that 1) respondent's frequent moves have prevented Blake from enjoying stable home and school environments; 2) respondent has neglected Blake's behavioral and academic problems; and 3) respondent has demonstrated a lack of moral fitness as Blake's custodial parent. Appellant suggests that each of these alone are sufficiently severe to make transfer of custody necessary to serve Blake's best interests. We disagree.

■ Section 452.410.1, RSMo 1994 provides that custody shall not be modified unless the trial court has jurisdiction and "it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child." A change in circumstances must be significant, *Rice v. Shepard*, 877 S.W.2d 229, 231 (Mo.App.1994), such that the child will "substantially benefit" from the transfer of custody. *V.L.P. v. J.M.T.*, 891 S.W.2d 577, 580 (Mo.App.1995). Thus, custody modification will be granted only where the child's welfare so requires and not upon a showing of slight changes. *Guier*, 918 S.W.2d at 947.

■ Appellant relies on *Randel v. McClanahan*, 760 S.W.2d 607 (Mo.App.1988) in which frequent moves by the custodial parent and changes in school created instability in the child's life and were reasons cited, among others, for the court's affirmance of custody modification. In that case, the custodial parent, Lyn Randel, allegedly moved twenty times[2] since the divorce, forcing her son, Robby, to attend four or five different schools. *Id.* at 608. Although factually similar to the instant case, we do not find *Randel* to be persuasive. Every custody case must be "examined in light of its own unique set of facts and circumstances." *Betterton v. Betterton*, 752 S.W.2d 417, 418 (Mo.App.1988).

■ Respondent offered no explanation for her frequent moves. She did, however, state that one move occurred during her marriage to Max Thorpe and that some of the remaining moves occurred during relationships with her various boyfriends. She further testified that Blake was present during only two moves.

The frequency of respondent's moves is important only in determining the effect of the moves on Blake. Numerous moves certainly can be disruptive to a child, but the same can be said of transferring custody from one parent to another. Seven of respondent's nine moves have taken place in Rolla. Although Blake has attended different elementary schools, he has been enrolled in the Rolla school district during the first, second and third grades. Kelly Carter, Blake's teacher, testified that each of these elementary schools have the same academic curriculum. Blake therefore has not had to adapt to studying different material at different speeds. Blake, of course, has had to make other adjustments that necessarily follow a move, including new homes and bedrooms, new neighborhoods and new playmates. These changes are not inconsequential, but under the facts of this case they do not rise to the level of significant changes required for custody modification.

**2.** The actual number of moves made by the custodial parent was disputed. Other evidence indicated that she moved ten times.

■ Appellant also suggests that respondent has neglected Blake's behavioral and academic problems. He alleges that she has failed to recognize and effectively seek help to correct their son's problems. We disagree.

■ Educational neglect is an important factor in determining whether a change of circumstances has occurred. *Johnson v. Johnson*, 758 S.W.2d 721, 725 (Mo.App.1988). In *Johnson*, a case cited by appellant, the court held that custody modification was in the best interests of Teddy, an eleven year-old boy. The mother frequently left him at home to care for two younger children at night and kept him from school for one week so that he could baby-sit. The mother was also unaware that her son had missed sixty-two classes. From this, the court determined that the mother "placed Teddy's baby-sitting duties above his educational needs." *Id.* Other evidence showed that the mother was verbally abusive towards her son, failed to keep Teddy's dental appointment or to seek medical care, and interfered with her ex-husband's visitation rights. *Id.* These facts readily distinguish *Johnson* from the instant case. Appellant himself concedes that respondent's alleged neglect is not as "egregious" as the neglect demonstrated in *Johnson.*

Respondent is a single parent juggling the demands of a full-time job and caring for two young children. She obviously loves Blake and is endeavoring to provide a good home for him while working at a minimum wage job. This is not to say that she has made the most prudent choices in her life. However, she is aware of Blake's behavioral and academic problems.[3] She is in contact with Blake's teacher and has not missed a parent-teacher conference. Together they are working to help Blake overcome his problems. Blake may suffer from a learning disability, but there is also evidence that his troubles stem from the stress of this custody action. In any event, according to his teacher, Blake has shown signs of improvement.

Appellant also complains that respondent has failed to obtain an assessment of Blake's mental health from a professional counselor. Respondent agrees that a counselor could help Blake, but she testified that she cannot afford such services. Appellant has not offered to pay for any counseling sessions.

■ Appellant and his wife, Teresa, have indicated an interest in helping Blake. Teresa, because she does not work outside the home, has more time to spend with Blake than does appellant. That appellant has re-married, is gainfully employed and can provide a suitable home are not grounds for modification because the focus is on the circumstances of the custodial parent and the child. *In re Marriage of Scobee*, 667 S.W.2d 467, 469 (Mo.App.1984). Appellant's circumstances are relevant only in determining whether his home is an acceptable place for Blake to live. *Id.*

Appellant has failed to show respondent has neglected Blake's academic and behavioral problems.

■ Appellant finally argues respondent has demonstrated a lack of moral fitness in that she has allowed boyfriends to spend the night while Blake is at home and for having another child, Blake's half-brother, out of wedlock. Although respondent's behavior in these regards is cause for concern, we disagree with appellant's contentions given the facts of this case.

It is proper for a trial court to consider the "morals and mode of life of the parties." *Wilmesherr v. Wilmesherr*, 708 S.W.2d 823, 824 (Mo.App.1986). The trial court here considered respondent's behavior and specifically restricted her from having overnight male guests when Blake is at home. Appellant contends that violation of such an order is too difficult to detect and enforce. Appellant further contends that respondent has not demonstrated the maturity necessary to comply with this order. He relies on *Rodenberg v. Rodenberg*, 767 S.W.2d 594 (Mo.App.1989), wherein this court reversed a custody award

3. According to Blake's teacher, respondent expressed surprise to find out that Blake was having trouble in school at the end of second grade. Respondent did not receive Blake's final second grade report card. Apparently, respondent could not afford to pay a fee resulting from a lost school book or books so Blake's report card was not distributed.

after finding the mother's conduct to be "irresponsible." The mother had a male friend sleep over five or six nights a week while her three children were present. In addition, one of the children's babysitters invited two boys into the home and had sex with one of them. Another babysitter, the mother's sister, was convicted of selling a controlled substance. In the instant case, there are no allegations in the record that we can equate with the poor judgment exhibited by the mother in *Rodenberg*. Respondent's life has not been mistake-free, but we believe she can comply with the trial court's order.

As for respondent giving birth to Blake's half-brother out of wedlock, appellant argues that this will be a constant reminder to Blake of his mother's indiscretions. However, if custody of Blake were to be transferred to appellant, Blake would still be exposed to the presence of a child born out of wedlock since appellant's step-daughter has a baby and has never married.

Appellant has not shown that Blake would substantially benefit from a transfer of custody. For the foregoing reasons, we affirm the trial court's denial of appellant's motion to modify custody.

All concur.