**Brenda Kay REEVES–WEIBLE, Appellant,**

v.

**David Allen REEVES, Respondent.**

No. WD 56735.

Missouri Court of Appeals, Western District.

June 30, 1999.

Thomas E. Hankins, Gladstone, for Appellant.

Nancy Caviar, Leawood, Kansas, for Respondent.

Before: SPINDEN, P.J., and EDWIN H. SMITH and RIEDERER, JJ.

EDWIN H. SMITH, Judge.

Brenda Reeves–Weible (formerly Reeves) appeals the judgment of the circuit court modifying its decree of dissolution of marriage by ordering, *inter alia*, a change of primary physical custody of her two minor children from her to their father, David Reeves, the respondent.

The appellant raises eight points on appeal. In her first seven points, she claims that the trial court erred in modifying custody because the record did not support its required finding of § 452.410[1] that, since the prior decree, there had been a substantial and continuing change in the children's or her circumstances. In Point VIII, she claims that the trial court erred in modifying custody because there was no substantial evidence to support its required finding of § 452.410 that a modification of custody was necessary to serve the best interests of the children.

We reverse and remand.

### Facts

The parties were married on April 4, 1981. Their first child, Lauren, was born on June 29, 1988, and their second child, Seth, was born on March 4, 1992. They separated in April 1996. On August 30, 1996, their marriage was dissolved by decree of the Circuit Court of Clay County, Missouri.

The parties were awarded joint legal custody of the children, with primary physical custody to the appellant. The respondent was awarded specific visitation with the children, which included every other weekend from Friday at 6 p.m. to Sunday at 6 p.m. and one evening per week from 5:30 p.m. to 8 p.m. In addition, he was awarded visitation every summer beginning on the first day after the children's last day of school through June 30 and again from August 1 until the day before the children's school year began. The time and expense of transporting the children to and from visitation with the respondent was to be borne by him. However, the court ordered that, if the appellant moved beyond a ninety-mile radius of Kansas City, Missouri, the issue of who would bear the time and expense of transportation could be revisited.

On October 3, 1997, the respondent filed a motion to modify custody, requesting, *inter alia*, primary physical custody of the children, or, in the alternative, that he be

[1]. All statutory references are to RSMo 1994, unless otherwise indicated.

allowed additional visitation with them in the summer and on long weekends when he was not working. He also requested that his child support obligation be decreased to compensate for his costs incurred in the transportation of the children for visitation. On November 3, 1997, the appellant filed a cross-motion to modify, requesting that the respondent's child support obligation be increased and that his visitation schedule with the children be decreased. She also requested attorney's fees and costs.

Evidence was heard on the respondent's motion to modify on September 22 and 25, 1998.[2] On November 16, 1998, the appellant filed a motion to re-open evidence. The trial court heard additional evidence on November 25, 1998. On December 7, 1998, the court entered its "order" modifying its dissolution decree, changing primary physical custody of the children from the appellant to the respondent and ordering her to pay him child support in the amount of $400 per month.

In changing custody, the trial court found a substantial and continuing change of circumstances had occurred in the circumstances of the appellant and the children in that: (1) the appellant had not provided proper adult supervision for the children and had left them alone on numerous occasions, which caused them stress, and she had attempted to mislead the court regarding the children's supervision; (2) since the original order of dissolution, the appellant had moved the children to two different cities, which had interfered with the respondent's visitation, and had refused to provide transportation for the children's visits with him; (3) Lauren had stated to the guardian *ad litem* and her school teacher that she wished to live with the respondent; (4) Seth had experienced school-related and emotional problems during his kindergarten year and the appellant had failed to pay proper atten-

tion to them; and (5) the appellant had changed the children's schools without advising or conferring with the respondent.

On December 29, 1998, the trial court entered a judgment *nunc pro tunc*, amending the title of its earlier "Order of Modification" to "Judgment of Modification." On December 30, 1998, the appellant filed a motion for an order setting *supersedeas* bond. On January 4, 1999, the respondent filed his answer to the appellant's motion and filed a cross-motion for temporary custody pending appeal. On this same date, the appellant filed her notice of appeal to this court. On January 8, 1999, the trial court granted the appellant's motion for order setting *supersedeas* bond and the respondent's motion for temporary custody of the children pending appeal.

This appeal follows.

### Standard of Review

 Our review of a judgment modifying child custody is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. *banc* 1976). *Bomar v. Kurtz*, 951 S.W.2d 657, 659 (Mo. App.1997). We will affirm the judgment so long as it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. *Id.* "When there is conflicting evidence, the trial court has the discretion to determine the credibility of the witnesses, accepting or rejecting all, part, or none of the testimony it hears.'" *Id. (quoting Guier v. Guier*, 918 S.W.2d 940, 946 (Mo.App.1996)). " 'Because the trial court is in the best position to weigh all the evidence and render a judgment based on the evidence, the judgment is to be affirmed under any reasonable theory supported by the evidence.'" *Id. (quoting Guier*, 918 S.W.2d at 946).

 In reviewing a judgment modifying child custody,

---

**2.** Although the record on appeal does not reflect what action the trial court took, if any, after September 25 and prior to November

16, 1998, we presume that the trial court took the respondent's motion to modify custody under advisement.

"[a] great deal of caution should be exercised in considering whether a judgment should be set aside on the ground that it is against the weight of the evidence, and only then upon a firm belief that the judgment of the trial court was incorrect. In child custody matters the trial court's determination must be given greater deference than in other cases."

*Id.* (*quoting Guier,* 918 S.W.2d at 946). In our review, we must view the evidence in the light most favorable to the decision of the trial court. *Id.*

## I.

In her first seven points, the appellant claims that the trial court erred in modifying custody because the record did not support its required finding of § 452.410 that, since the prior decree, there had been a substantial and continuing change in the children's or her circumstances. Specifically, she attacks the trial court's findings in its written judgment on which it relied to determine that there had been a substantial and continuing change of circumstances, requiring a modification of custody. In this respect, the trial court found that:

a. [The appellant] has not provided proper adult supervision for the minor children and has left them alone on numerous occasions. The Court, after an interview in chambers, finds that the actions of [the appellant] have caused the children significant stress. [The appellant] attempted to mislead the Court regarding the supervision of the children, as well as on other issues.

b. Since the original order [the appellant] has moved the children to two different cities, a significant distance from the Respondent, which has interfered with Respondent's weekly visitation. [The Appellant] has continually refused to provide any of the transportation for Respondent's visitation.

c. The minor child, Lauren Reeves, has stated to the Guardian Ad Litem and her teacher that she wishes to live with Respondent.

d. The minor child, Seth Reeves, had school related and emotional problems during his kindergarten year and [the appellant] failed to pay proper attention to these problems.

e. [The appellant] has further changed the children's school without advising or conferring with the Respondent.

As to the change of circumstances found, the appellant claims that: (1) they were not supported by substantial evidence; and (2) even if they were, they did not support a finding of a substantial and continuing change of circumstances requiring a change of custody pursuant to § 452.410. Inasmuch as the appellant's first seven points all deal with the same issue, we will address them as one point.

Section 452.410.1 sets forth what the trial court must find before modifying a prior custody decree. It provides, in pertinent part, that:

the court shall not modify a prior custody decree unless it has jurisdiction under the provisions of § 452.450 and it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child.

§ 452.410.1. Under this subsection, before a court can change physical custody of a minor child as being in his or her best interests, it must first determine that there has been a substantial and continuing change of circumstances of the child or custodian. *Bomar,* 951 S.W.2d at 660.

There is a presumption that the party awarded custody in the original decree is a suitable custodial parent. *Guier,* 918 S.W.2d at 947. As such, the party seeking to change custody has the burden of proving a change in circumstances requiring modification. *Id.* This required

finding of a change in circumstances must relate to the circumstances of the child or the custodial parent, not the noncustodial parent. *McCreary v. McCreary*, 954 S.W.2d 433, 439 (Mo.App.1997). The change must be of a nature that the child will substantially benefit from the transfer and the welfare of the child requires it, *id.*, in that children should not be moved from one environment to another upon slight changes of the status of the parents, *Guier*, 918 S.W.2d at 947, inasmuch as there is much value in allowing children to remain with the custodial parent as opposed to uprooting them from familiar surroundings and moving them to a different home. *McCreary*, 954 S.W.2d at 446. Thus, " '[e]ven if there is some showing at a modification hearing that a change of circumstances has occurred, such change must be significant before a child custody decree may be modified.' " *Mobley v. Phillips*, 942 S.W.2d 399, 401 (Mo.App. 1997) (*quoting In re Marriage of D.L.M.*, 783 S.W.2d 473, 474–75 (Mo.App.1990)). Not every change in the life of a child or his or her custodian is enough to trigger a modification of custody. *Shockey v. Curtis*, 971 S.W.2d 320, 322 (Mo.App.1998).

With the foregoing principles to guide us, we now turn to the change of circumstances found by the trial court to ascertain whether they are supported by the record, and if they are, whether they support its determination of a substantial and continuing change of circumstances, requiring a change of custody.

### A. Proper Supervision

■ With respect to its first finding, the trial court found that the appellant had

> not provided proper adult supervision for the minor children and ha[d] left them alone on numerous occasions. The Court, after an interview in chambers, finds that the actions of the [appellant] have caused the children significant stress. The [appellant] attempted to mislead the Court regarding the super-

vision of the children, as well as on other issues.

The lack of proper supervision can be a substantial and continuing change in circumstances warranting a change in custody, if found to be in the best interests of the children. *McCreary*, 954 S.W.2d at 440. In this context, lack of proper supervision is defined as a failure to provide supervision such that a minor child's physical health would be endangered or his or her mental or emotional development impaired. *Id.* at 441.

■ As to the issue of supervision, the record reflects that when Lauren and her stepbrother, Ryan, were in the fourth grade (1997–98 school year), they attended Honey Bear Day Care after school. In the fall of the next school year (1998–99), because Lauren and Ryan, then age ten and attending fifth grade, no longer wanted to attend Honey Bear, they were allowed to ride the bus home after school so that they were home alone for twenty to thirty minutes before the appellant or her husband, Dr. Weible, arrived home from work. The appellant's work was located approximately forty miles away and her husband's sixty-five. The appellant's neighbor, Jackie Woody, who lived approximately 110 feet from the appellant's home, was to keep an eye on the children while they were home alone. This after-school arrangement continued until the appellant learned from the trial court, during the hearing on the respondent's motion to modify, that it did not approve of it, at which time it ceased and the children were enrolled in an after-school child care program. Lauren and Ryan's being home alone occurred approximately eighteen times. The parties' son, Seth, then age six, was never allowed to be at home without adult supervision. While home alone, Lauren was never physically harmed. However, on one occasion, Ryan cut his finger with a knife while trying to sharpen it. On this occasion, Lauren took Ryan to a neighbor, who cared for his cut, which did not require medical attention.

Given the totality of the circumstances when viewed in a light most favorable to the trial court's decision, of Lauren being home alone after school, which would include the fact she was 10 years of age and in the fifth grade, she was from all accounts responsible by nature, the neighborhood involved was not of questionable character, and the period of time the child was to be alone was relatively short in duration, we do not believe it constituted a substantial and continuing change of circumstances such that a change of custody would significantly benefit the children. Although in hindsight a court might feel warranted in criticizing a parent for allowing the after-school arrangement in question here, we do not believe that it constituted such a lack of supervision which would support a modification of custody. *McCreary*, 954 S.W.2d at 441.

 In making its finding as to a lack of proper supervision, the trial court also found that Lauren experienced significant stress from being home after school without adult supervision. While conduct on the part of the custodial parent which causes a child stress, anxiety, or emotional disturbance can constitute a substantial and continuing change of circumstances warranting a change of custody, *Mobley*, 942 S.W.2d at 402 (*citing M.L.G. v. J.E.G.*, 671 S.W.2d 312, 316 (Mo.App.1984)), we find that the record here does not support the court's finding that the appellant's conduct in allowing Lauren to be home after school without adult supervision caused her significant stress. As to this issue, during an in-chambers interview with Lauren, the trial court asked her whether she liked staying home alone and was it scary. Although the respondent contends that she answered these questions in the affirmative and was crying, the record indicates that Lauren's responses were inaudible. The appellant testified that Lauren told her that she was not afraid to be home alone after school for twenty to thirty minutes and that she preferred being home alone to going to an after-school

child care program. Given the record, it is impossible to determine whether Lauren was experiencing any stress other than that associated with the proceeding. Further, although Lauren may have experienced some stress associated with the after-school arrangement, we fail to see how it would reasonably rise to the level of stress and anxiety that would so adversely affect a child's emotional state and well-being that modification was required.

 Finally, on the issue of supervision, the trial court found that the appellant had attempted to mislead it, as well as on "other issues." For purposes of our discussion, we will treat "misleading the court" in the same vein as perjury, which can, as a general proposition, demonstrate the moral unfitness of a parent to have custody of his or her children. *Petty v. Petty*, 760 S.W.2d 555, 557 (Mo.App.1988); *P— D— v. C— S—*, 394 S.W.2d 437, 444 (Mo.App.1965). However, such conduct of the custodial parent warrants a change in custody only in those instances where it is " 'so gross, promiscuous, open or coupled with other anti-social behavior as to directly affect the physical, mental, economic and social well-being of the child that a change is warranted.'" *Bomar*, 951 S.W.2d at 661 (*quoting Mobley*, 942 S.W.2d at 402). " 'The record must contain evidence that the parent's conduct has had or will have an adverse impact on the child.'" *Id.* (*quoting Mobley*, 942 S.W.2d at 402).

 As to misleading the court on the issue of supervision, the record here reflects that when initially asked at the September 22, 1998, hearing how often she left her children home alone, the appellant stated that she never left them home alone. However, at the continuation of the hearing on November 25, 1998, she testified that Lauren and her stepson, Ryan, were, in fact, home alone for less than an hour after school on approximately eighteen occasions. When asked about her previous testimony that the children had never stayed home alone, she explained

that, because her neighbor, Jackie Woody, was to keep an eye on the children when they were home after school, she did not consider them to be home alone. As such, there is a question as to whether the appellant actually attempted to mislead the trial court on the issue of the children's supervision. However, even if substantial evidence supported the trial court's finding that the appellant had attempted to mislead it on the issue of supervision, we find that it did not constitute a substantial and continuing change of circumstances requiring a change of the children's custody in that there is no showing in the record that the appellant's attempt to mislead the court on this issue directly or adversely affected the physical, mental, or social well-being of Lauren and Seth. As such, although we in no way sanction any attempt by a parent to mislead the trial court on issues of custody, because we find no evidentiary support to find that the appellant's conduct in this regard adversely affected the children, it did not constitute a substantial and continuing change of circumstances warranting modification of their custody.

As to the "other issues" on which the trial court found the appellant had attempted to mislead it, the record is unclear as to which issues the court is referring. In his brief, the respondent suggests that the appellant misled the court on three "other issues." First, he claims that the appellant misled the court when she testified that he had committed the crimes of shoplifting and arson, when, in fact, he had not done so. Second, he points out that in the appellant's deposition testimony she denied that the children had spent every weekend between February and June 1998 with the respondent. However, at trial, she testified that she had been mistaken about her previous deposition testimony and that her records did confirm that the children had spent those weekends with the respondent. Lastly, he claims that the appellant misled the court when she testified that she had a close relationship with her stepmother, while he claims that she did not. Even if the trial court, in finding that the appellant had attempted to mislead it on "other issues," was referring to the instances suggested by the respondent in his brief, and even if substantial evidence supported the court's finding in that respect, we find that these instances did not constitute a substantial and continuing change of circumstances requiring a change of the children's custody in that, as discussed, *supra*, there is no showing in the record that the appellant's conduct directly or adversely affected the physical, mental, or social well-being of the children. As such, even assuming that the appellant attempted to mislead the court on "other issues," it did not constitute a change of circumstances warranting modification of their custody.

### B. Moving the Residence of the Children and Failing to Provide Transportation for Visitation

As to the issue of moving residences, the trial court found that "[s]ince the original order [the appellant] ha[d] moved the children to two different cities, a significant distance from the Respondent, which has interfered with Respondent's weekly visitation." As to the issue of the appellant's failing to provide transportation for the respondent's visitation, the trial court found that "[the appellant] ha[d] continually refused to provide any of the transportation for Respondent's visitation."

As to these issues, the record reflects that, following the appellant's separation from the respondent, but prior to the decree of dissolution, she moved with the children from Excelsior Springs to Warrensburg, which is approximately fifty-five to sixty miles from Excelsior Springs. The appellant moved to Warrensburg in order to accept a position as an elementary school principal. She informed the respondent of her intent to move prior to doing so. The decree provided that the respondent was to provide transportation for the children, at his expense, for his

visitation with them, and that should the appellant move beyond a ninety-mile radius of Kansas City, Missouri, the issue could be revisited. In July 1997, after the parties' marriage was dissolved, the appellant moved, with the children, to Sedalia, Missouri, in anticipation of her upcoming marriage to Dr. Weible. The appellant places Sedalia within ninety miles of Kansas City. The respondent claims that the appellant's house in Sedalia is 104 miles from his house in Excelsior Springs. After moving to Sedalia, the appellant provided transportation for the children to visit the respondent on five or six occasions. However, she did not otherwise share in the time and expense of transporting them for their visits with him. After the move, the respondent stopped exercising his two and a half hours of visitation with the children on Wednesday evenings, claiming that he was unable to do so because of the travel time between his house and the appellant's.

Section 452.410.1 provides that custody may be modified due to a change of circumstances of the custodial parent or children upon the basis of facts that have arisen *since* the prior decree or that were unknown to the court at the time of the decree. Here, the appellant moved to Warrensburg prior to the decree of dissolution. In the decree, the appellant's address is listed as Warrensburg. Because her move to Warrensburg occurred prior to the decree and was known to the court at the time, that move could not be considered in determining that a substantial and continuing change of circumstances had occurred. *Mobley,* 942 S.W.2d at 400–01. Thus, the record reflects that there was only one move by the appellant since the decree which could be considered by the trial court in deciding whether there had been a substantial and continuing change of circumstances requiring modification. Having made this determination, we will address whether this one move constituted a substantial and continuing change of circumstances.

With respect to the issue of moving residences, a change of circumstances may occur within the meaning of § 452.410.1 when a custodial parent moves a considerable distance from the noncustodial parent's residence. *Dover v. Dover,* 930 S.W.2d 491, 494 (Mo.App.1996). This is so because "Missouri's public policy favors 'frequent and meaningful contact with both parents after the parents have separated or dissolved their marriage ....,'" *id.* at 496 (*quoting* § 452.375.3), and any impediment to such contact is to be avoided. However, a change of residence alone does not require a change of custody. *Rice v. Shepard,* 877 S.W.2d 229, 231 (Mo. App.1994). " 'In our highly mobile society, it is unrealistic to inflexibly confine a custodial parent to a fixed geographical area, if removal to another area for reasons such as change of employment, remarriage, etc., is consistent with the best interest of the minor children.' " *Riley v. Riley,* 904 S.W.2d 272, 276 (Mo.App.1995) (*quoting In re Marriage of Greene,* 711 S.W.2d 557, 564 (Mo.App.1986)). While numerous moves of the custodial parent can be disruptive to a child's life, the same can be said of transferring custody of the child from one parent to another. *Senciboy v. Thorpe,* 947 S.W.2d 116, 119 (Mo.App. 1997).

In *Mobley v. Phillips,* 942 S.W.2d 399 (Mo.App.1997), the mother was awarded primary physical custody of the parties' son in the dissolution proceeding. She subsequently moved with her son five times. *Id.* at 403. Two of the moves required the child to change schools. *Id.* However, the mother never moved out of Missouri and always informed the father of her moves. *Id.* The father filed a motion to modify custody. *Id.* at 400. The trial court found that there had been a substantial and continuing change in circumstances based, *inter alia,* on the numerous changes of residences such that modification of custody was in the child's best interests. *Id.* This court reversed, finding that nothing in the record indicated that

the moves had had any adverse effect on the child. *Id.* at 403. The court found that the record did not lend itself to a finding that the mother's moves had created an unstable lifestyle for the child such that a change of custody would serve the child's best interests. *Id.*

In *Basler v. Basler,* 892 S.W.2d 749 (Mo. App.1994), the mother and father were living in Ste. Genevieve, Missouri, at the time of the dissolution of their marriage in 1987. The trial court awarded primary physical custody of the children to the mother. *Id.* at 749. Thereafter, the mother moved with the children several times, requiring them to change schools. *Id.* at 750. However, all of the moves resulted in their residence being in southeast Missouri. *Id.* In 1993, the mother informed the father that she intended to move, with the children, to Fulton, Missouri, because of her upcoming remarriage. *Id.* The father filed a motion to modify custody, which the trial court sustained, finding a substantial and continuing change of circumstances based, *inter alia,* on the mother's remarriage and move to Fulton. *Id.* at 752. The judgment was reversed on appeal, the appellate court finding that the mother's move from southeast Missouri to central Missouri was not a change of circumstances sufficient to warrant a change of custody. *Id.* at 752–53. *See also Shoemaker v. Shoemaker,* 812 S.W.2d 250, 254 (Mo.App.1991) (holding that no substantial and continuing change in circumstances had occurred where there was no evidence of an adverse effect on the child even though the mother has moved six times since her marriage was dissolved).

■ The one change in the residence of the children resulted, at most, in their living an additional forty-nine miles from the respondent's residence. While this move may have interfered with the respondent's two and a half hours of visitation time with the children on Wednesday evenings, it did not otherwise impede his weekend, holiday, or summer visitation. As such, the appellant's move to Sedalia

did not interfere with the respondent's visitation with the children such that it significantly diminished the time he spent and prevented a meaningful relationship with them. Viewing the record in a light most favorable to the trial court's judgment, we find that the appellant's move to Sedalia was not a substantial and continuing change of circumstances warranting modification of custody. *Shoemaker,* 812 S.W.2d at 254.

■ As to the trial court's finding that the appellant failed to provide transportation for the children to visit with the respondent, the record does support such a finding. However, according to the terms of the dissolution decree, she had no obligation to provide transportation for visitation as long as she lived within ninety miles of Kansas City. It is unclear from the record whether the appellant actually lives more than ninety miles from Kansas City. She claims that her home is within ninety miles of Kansas City. The respondent offered no evidence on this issue. He did testify that it is 104 miles from his residence in Excelsior Springs. In any event, even if there was evidence to support a finding that the appellant had moved beyond a ninety-mile radius of Kansas City, the decree only provided that the issue of providing transportation for visitation could be revisited, but did not, *sua sponte,* require the appellant to provide transportation in that circumstance. Thus, the fact that the appellant refused to provide transportation for the children's visitation with the respondent could not be viewed as a change of circumstances requiring modification inasmuch as the existing order of custody required the respondent to provide such transportation.

### C. Child's Preference as to Custody

■ The trial court found, with respect to this issue, that "[t]he minor child, Lauren Reeves, ha[d] stated to the Guardian Ad Litem and her teacher that she wishe[d] to live with Respondent." The record reflects that Lauren told the guard-

ian *ad litem* and her fifth grade school teacher that she wanted to live with the respondent. The respondent contends that the preference of the child as to a custodian is a change of circumstances on which to modify custody. To the extent that he is contending that the child's desire or preference alone, without regard for the underlying reasons for the preference, is sufficient to constitute a substantial and continuing change of circumstances warranting modification of custody, we disagree.

Section 452.410 does not specify the individual change of circumstances that will trigger modification. It simply requires that the change be such that "modification is necessary to serve the best interests of the child." § 452.410.1. Appellate decisions have addressed the issue of the effect of the stated preference of a child as to his or her custodian in a modification proceeding. However, the respondent does not cite nor does our research disclose any case that has held that the preference of a child alone was a sufficient change of circumstances to support modification. On the contrary, the cases dealing with this issue have consistently held that modification of custody should not turn on the desire of a child as to who should be his or her custodian. *Breckner v. Coble*, 921 S.W.2d 624, 627 (Mo.App.1996); *Ijames v. Ijames*, 909 S.W.2d 378, 380 (Mo.App.1995); *In re Marriage of Thompson*, 682 S.W.2d 849, 851 (Mo.App.1984); *Knoblauch v. Jones*, 613 S.W.2d 161, 167 (Mo.App.1981); *Schmidt v. Schmidt*, 591 S.W.2d 260, 263 (Mo.App.1979). In our view, the upshot of these cases is that the preference of a child alone as to his or her custodian is not a substantial and continuing change of circumstances justifying modification of custody.[3] However, this is not to say that the underlying basis for the child's preference as to custody, *i.e.*, the custodian is sexually abusing the child, would not be a change of circumstances warranting modification.

■ Although the desires or wishes of the child as to his or her custodian alone may not be a change of circumstances for purposes of a modification proceeding, it is, in our reading of the law, a mandatory factor to be considered in making the required best interests determination of § 452.410. Section 452.410 is silent on the issue of how the trial court is to determine the best interests of the child in a modification proceeding. However, § 452.375.2,[4] RSMo Supp.1998, sets forth the factors the

**3.** There is no evidence in the record to reflect that the desire of Lauren to live with the respondent was a change from her desire when the previous decree was entered.

**4.** Section 452.375.2, RSMo Supp.1998, provides:

The court shall determine custody in accordance with the best interests of the child. The court shall consider all relevant factors including:

(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

(5) The child's adjustment to the child's home, school, and community;

(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm;

(7) The intention of either parent to relocate the principal residence of the child; and

(8) The wishes of a child as to the child's custodian.

court is required to consider in determining "custody" in accordance with the best interests of the child, without specifying the type of proceeding in which the issue arises. One such factor is the "wishes of a child as to the child's custodian." § 452.375.2(8), RSMo Supp.1998. As to the application of this factor, and the other factors of the subsection, in a modification of custody proceeding pursuant to § 452.410, the Eastern District of this court held, in *Maher v. Maher,* 951 S.W.2d 669, 673 (Mo.App.1997), that they were not applicable. This district, when addressing the same issue in *Cook v. Warren,* 916 S.W.2d 409, 413 (Mo.App.1996), held that the trial court, although not required to consider the statutory factors, was not foreclosed from doing so. Here, revisiting the issue, we believe a careful reading of the statute, while giving the language used its plain and ordinary meaning, *State ex rel. Riordan v. Dierker,* 956 S.W.2d 258, 260 (Mo. *banc* 1997), would indicate that the court in deciding the best interests of a child, as statutorily required, in any proceeding involving a determination of custody, which would by definition include a modification of custody proceeding, must consider the statutory factors of § 452.375.2, RSMo Supp.1998. Thus, to the extent our holding here is contrary to the Eastern District's holding in *Maher, supra,* we choose not to follow it. And, to the extent it conflicts with our own holding in *Cook, supra,* the holding there is overruled.

For the reasons stated, we find that, to the extent that the trial court relied on Lauren's preference as to her custodian, in making its required statutory determination of a change of circumstances requiring modification of custody, as opposed to the underlying reasons for her preference, it erred.

## D. Seth's School and Emotional Problems

On this issue, the trial court found that "[t]he minor child, Seth Reeves, had school related and emotional problems during his kindergarten year and [the appellant] failed to pay proper attention to these problems." In this respect, the record reflects that during his kindergarten year of school (1997–98), Seth attended Hebert Hunt Elementary School in Sedalia and was an average student until approximately December 1997, which was shortly after the respondent filed his motion to modify. As a result, Seth's problems in kindergarten were not included as a ground for modification in his motion. In any event, beginning in December, there was a decline in Seth's academic performance. And, beginning in March 1998, Seth's teachers became concerned and felt that he was distracted from his schoolwork. Christina Love, Seth's kindergarten teacher, routinely sent notes home with Seth regarding his academic performance. And, on a regular basis, the appellant returned those notes signed to her the next day. However, on four occasions notes were not returned the very next day. Also, on several occasions Seth's schoolwork was still in his backpack the next day when he returned to school. However, while Love testified that Seth's academic performance declined in January 1998, he was still able to pass the required kindergarten skills in May 1998 and advance to the first grade.

In January 1998, Wanda Meyer, Seth's kindergarten reading teacher, contacted the appellant and requested a conference with her to discuss Seth's academic performance. The appellant and Meyer held a telephone conference, wherein Meyer recommended to the appellant that she should look into getting Seth tested for learning disabilities. However, Meyer suggested that she wait until Seth was in the first grade and had had more time to adjust to school before he was tested. In April 1998, Meyer had a conference with the appellant to discuss Seth's performance. At the conference, the appellant requested that the school test Seth for learning disabilities at that time, but later decided to

wait until the next school year. Meyer agreed with her decision to wait on the testing. She testified that the appellant expressed the appropriate level of concern for Seth's academic performance. Meyer found that Seth did well academically in a classroom with only a few students that was taught by a teacher as well as a teacher's assistant. She was afraid that if he were placed in a classroom with a large number of students, he might "fall through the cracks" educationally.

In the first grade, Seth changed schools from Hebert Hunt Elementary School to Crest Ridge North Elementary School, where the appellant was the principal. At Crest Ridge, Seth was in a first-grade class with ten students. If he had stayed at Hebert Hunt, he would have been in a classroom with between twenty-two and twenty-five students. Further, at Crest Ridge, Seth's class was taught by a teacher and a teacher's assistant. Teresa Gibson, Seth's first-grade teacher, testified that he was doing well academically in first grade and had improved in his reading. She further testified that he did very well in math, got along well with the other students and his teachers, and seemed very happy in class. Gibson assigned homework for her students almost every night, and Seth always turned his in on time.

▮ The neglect of a custodial parent as to the educational needs of a child can be a substantial and continuing change of circumstances warranting modification of custody. *Senciboy*, 947 S.W.2d at 120. However, the poor academic performance of a child does not automatically necessitate modification. In *Senciboy*, the court held that there was no substantial and continuing change in circumstances warranting modification of custody where the child's academic performance declined in second grade, but began to improve slightly in third grade, and where the custodial parent was adequately addressing the child's academic problems. *Id.*

Although there was some evidence from which the trial court could have found that the appellant may have been somewhat inattentive to the problems Seth was experiencing in kindergarten, it did not amount to a substantial and continuing change of circumstances. Even if Seth's problems were not attributable to the pending litigation filed by the respondent, the record clearly reflects that the appellant met with Seth's teachers to discuss his performance and expressed the appropriate level of concern. She moved him to a different school in the first grade so that he could be in a classroom with fewer students and receive more individualized attention. Furthermore, there was no continuing pattern of poor academic performance by Seth in the first grade. In fact, his academic performance substantially improved. Therefore, even viewing the record in a light most favorable to the trial court's judgment, it does not support a finding of the appellant's educational neglect on which modification of custody could be based.

### E. Changing Children's Schools

With regard to this issue, the trial court found that "[t]he appellant ha[d] further changed the children's school without advising or conferring with the Respondent." The record reflects that since the parties' dissolution decree, the appellant moved from Warrensburg to Sedalia. This move required Lauren to change schools from Leeton R–10 Elementary School in the Warrensburg area to Hebert Hunt Elementary School in Sedalia where she attended fourth grade and was attending fifth grade at the time of the hearing on the respondent's motion to modify. While the appellant informed the respondent that she was moving to Sedalia, she did not confer with him on her decision to do so. In Sedalia, Seth went to kindergarten at Hebert Hunt Elementary School. However, in the first grade, the appellant moved him to Crest Ridge North Elementary School. Prior to changing Seth's school, the appellant sent the respondent an e-mail message to confer with him on the

decision. However, she never received a reply.

■ The custodial parent's consistent changing of the children's schools can constitute a substantial and continuing change of circumstances. *Florea v. Florea,* 688 S.W.2d 373, 374–75 (Mo.App.1985) (finding a substantial and continuing change of circumstances where the mother had changed residences ten times in eight years and had enrolled the child in four or five different schools). However, while such changes are not inconsequential, *Senciboy,* 947 S.W.2d at 119, they alone do not necessarily warrant a change of custody. The record must reflect that such school changes have had an adverse effect on the child. *Mobley,* 942 S.W.2d at 403.

■ Since the parties' dissolution decree, both children have changed schools only one time. As to Lauren, there was substantial evidence to support the trial court's finding that the appellant changed her school without conferring with the respondent. However, Lauren has always done well academically and continued to do so at Hebert Hunt Elementary School in Sedalia. Thus, while we do not condone the appellant's failure to .confer with the respondent on moving to Sedalia and, thus, necessarily changing Lauren's school, the record reflects that the school change had no adverse effect on her academically, and, as such, was not a substantial and continuing change of circumstances warranting modification of her custody.

■ As to Seth, the appellant sent the respondent an e-mail message regarding her plan to change his school from Hebert Hunt to Crest Ridge for the 1998–99 school year. However, the respondent never replied to her message. Thus, viewing the record in a light most favorable to the trial court's judgment, we do not believe that it supports a finding that the appellant changed Seth's school without advising or conferring with the respondent. Moreover, as discussed, *supra,* while Seth experienced some academic problems during his kindergarten school year, his change of school in the first grade had a positive effect on him. As such, the record fails to reflect that his change of school had any adverse effect on him. Hence, even if the record supported the trial court's finding that the appellant changed Seth's school without conferring with the respondent on that decision, it was not a substantial and continuing change of circumstances warranting modification of custody.

## Summary

We recognize that cases involving custody determinations, more so than other civil cases, require us to pay a great deal of deference to the trial court's decision as to who should be awarded custody. *McCreary,* 954 S.W.2d at 447. However, in a case of modification, as opposed to an original determination of custody, before a trial court can award custody in order to best serve the interests of the children, it must first be presented with a sufficient evidentiary basis for finding a substantial and continuing change of circumstances as required under § 452.410.1. *Id.* In this case, although the record reflects some changes in the circumstances of the children and the appellant, in our view, for the reasons indicated, the changes were not so significant that there would be substantial benefit to the children in changing their custody and thus, did not support a finding of a substantial and continuing change in circumstances requiring modification. Hence, we find the trial court erred in sustaining the respondent's motion to modify custody. ·

Given our disposition of the appellant's first seven points, we need not address her eighth.

## Conclusion

The judgment of the circuit court modifying its prior decree of custody changing the primary physical custody of the children from the appellant to the respondent is reversed and the case remanded with

directions that the court reinstate its previous decree.

All concur.