Allen E. JOHNSON, Respondent,

v.

Mary C. (Johnson) LEWIS, Appellant.

WD 56958

Missouri Court of Appeals, Western District.

Feb. 29, 2000.

Donald J. Lock, Gladstone, for appellant.

Michael J. Svetlic, Kansas City, for respondent.

Before Presiding Judge LAURA DENVIR STITH, Judge VICTOR C. HOWARD and Judge THOMAS H. NEWTON.

LAURA DENVIR STITH, Presiding Judge.

Mary C. Lewis (Mother) appeals the decision of the trial court granting a motion to modify filed by Allen E. Johnson (Father), in which Father requested the court to change primary physical custody of their son Jason from Mother to Father. Mother asserts the trial court erred in granting this change of custody because (1) there was no showing of a substantial change in circumstances, and (2) even if there were a substantial change in circumstances, the modification of custody was not in the best interests of Jason. The trial court gave two grounds for finding a substantial change of circumstances existed: that Jason wanted to live with Father and that Father would provide a better home environment. We agree with Mother that, because neither of these circumstances constitutes a substantial and continuing change in circumstances of the child or his custodian, they did not provide a basis for the trial court to find a "change of circumstances" existed as that phrase is used in Section 452.410 RSMo 1994.

While Father alleges that other bases for finding a substantial change of circumstances existed, we cannot determine on this record that the trial court found these bases to exist or found them sufficient to constitute a substantial change in circumstances. We therefore remand for the trial court to determine whether the other grounds asserted by Father below to support the change of circumstances constitute a substantial change of circumstances, and, if so, whether it would be in Jason's best interest for custody to be changed to Father. In determining the latter issue, the court should consider whether Jason has special education needs, as alleged by Mother, and, if so, whether those needs will be met by the parent given primary physical custody of Jason.

## I. FACTUAL AND PROCEDURAL HISTORY

The marriage of Mother and Father was dissolved on November 26, 1984. Two children had been born to them during the marriage: Anthony, born September 12, 1975, and Zachary, born September 9, 1980. In the dissolution decree, the court awarded custody of the then minor children to Mother. On February 4, 1987, the court found that a third child, Jason, born April 30, 1986, was also the child of Mother and Father, and awarded custody of Jason to Mother.

Mother and Father both became involved in a variety of relationships following the dissolution. Father remarried on four separate occasions. On the third occasion, Father married Cheryl, but they divorced in 1997. After Father and Cheryl's divorce, Father married another woman, Susan. Father was in the process of dissolving his marriage to Susan at the time of the modification hearing and was living with and said to be engaged to be married again to his former wife, Cheryl. He said that once they married, he and Cheryl planned to move to Arkansas, and wanted Jason to move with them.

Sometime after the dissolution, Mother became involved in a relationship with a man named Jim Bradley. The parties'

oldest child, Anthony, did not get along well with Mr. Bradley, and in 1992 he expressed a desire to live with his Father. Mother consented to this arrangement, and, on April 14, 1993, an order of modification was entered awarding custody of Anthony, then 17 years old, to Father. Mother retained custody of the two younger children, Zachary and Jason, and the order permitted her to relocate with the children to Minnesota. Mother later began a relationship with Peter Lewis, and married him in early 1997. Mother, Peter, Zachary and Jason all lived together in New York. At this time, Jason was having difficulty in school and was diagnosed with attention deficit hyper-activity disorder (ADHD). Jason was enrolled in special education at school and was taken to special tutoring classes two nights each week.

On October 23, 1997, Mother filed a motion to modify child support, visitation, and a determination of monies due. On December 1, 1997, Father responded. He requested additional visitation, abatement of child support during visitation, joint legal custody, and for hospital insurance to be paid by Mother's new husband. In the Summer of 1998, Jason spent six weeks of visitation with his Father. During this time, Father asserted, Jason expressed a desire to live with Father and Cheryl once they remarried. However, Jason did not testify and thus there was no direct evidence as to his wishes. On July 21, 1998, Father filed a cross-motion to modify in which he requested custody of Jason and permission to move with Jason to Arkansas.

On August 19, 1998, the court held a hearing on both motions. Much of the evidence concerned Father's alleged change of circumstances in light of his planned remarriage to Cheryl and planned move to Arkansas. It also addressed the best interests of Jason. Mother testified as to Jason's diagnoses of cerebral palsy, ADHD and a learning disability, his participation in the special education program at public school, as well as his regular attendance at a private learning center. Mother stated that she meets with Jason's teachers periodically to track his progress, and explained that whenever she attempts to speak with Father about Jason's problems, Father hangs up the telephone. Father, on the other hand, stated that he was not a firm believer that Jason is in need of special education, and noted his belief that Mother is an alarmist and that she exaggerates Jason's situation. He stated that if Jason has problems, he will address them, and stated that he had taken steps to speak with the public school district in Arkansas about its special education program. He also alleged Mother failed to keep him informed as to Jason's medical and educational problems.

On November 3, 1998, the court entered its order modifying its dissolution decree, finding a substantial change in circumstances existed that warranted a change in the primary physical custody of Jason from Mother to Father because (1) Jason wanted to live with Father, and (2) Father's living environment was superior. Mother appeals.

## II. STANDARD OF REVIEW

Our review of a judgment modifying child custody is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). We will affirm the judgment so long as it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. *Id.*; *Bomar v. Kurtz*, 951 S.W.2d 657, 659 (Mo.App.1997). We give greater deference to the trial court in child custody cases than in other types of cases because the trial court is in the best position to judge the credibility of the parties, their sincerity, character, and other intangibles which may not be revealed by the record. *McElroy v. McElroy*, 910 S.W.2d 798, 802 (Mo.App.1995); *Conoyer v. Conoyer*, 695 S.W.2d 480, 483 (Mo.App.1985).

## III. MODIFICATION OF CHILD CUSTODY

In her sole point on appeal, Mother asserts the trial court erred in modifying

custody because the record lacks evidence to support a finding that there was a substantial and continuing change in either Jason's or Mother's circumstances which warranted a modification of custody, and that, even if there were sufficient evidence of changed circumstances, the evidence showed that a change in custody was not in Jason's best interests.

In its judgment granting a modification of custody, the trial court found:

[T]here has been a substantial and continuing change of circumstances such that it is in the best interest of the minor child, [Jason], born April 30, 1986 for his custody to be transferred from [Mother] to [Father] immediately and that [Father] should be granted leave to remove the minor child from the State of Missouri to [Father's] residence in the State of Arkansas. *Such substantial and continuing changes of circumstances include but are not limited to [Jason's] request to live with [Father] and the environment of [Father] is superior to the [Mother] for raising of a minor child.*

(emphasis added). Mother asserts that the two changes of circumstance found by the court are insufficient factors upon which to base a modification of custody.

■ The burden of proving a change in circumstances sufficient to justify modification of custody is on the party seeking to change custody. *Guier v. Guier,* 918 S.W.2d 940, 947 (Mo.App.1996) (other grounds superseded by statute as stated in *Harrison v. King,* 7 S.W.3d 558 (Mo.App. 1999)). The change of circumstance must be of a significant nature, directly affecting the welfare of the child. *McCreary v. McCreary,* 954 S.W.2d 433, 439 (Mo.App. 1997); *Mobley v. Phillips,* 942 S.W.2d 399, 401 (Mo.App.1997). And, as Section 452.410.1 states:

[t]he court shall not modify a prior custody decree unless it has jurisdiction under the provisions of section 452.450 and it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child.

Sec. 452.410.1 RSMo 1994. Therefore, before a court can change physical custody of a minor child as being in his or her best interests, it must first determine that there has been a substantial and continuing change of circumstances *of the child or custodian,* not merely that there has been a change in the circumstances of the non-custodial parent. *McCreary,* 954 S.W.2d at 439–40. And, that change must be shown to be significant before it will justify a change in custody. *Id.*

■ Here, the trial court specifically stated in its judgment that it based its decision to modify custody upon the facts that (1) Father's environment was superior to Mother's for raising a child and (2) Jason preferred to live with Father. Neither of these reasons constitutes a valid basis for finding a substantial change of circumstances under Section 452.410.1. Thus, the court said it found substantial change of circumstances because it found that Father's living environment was superior to Mother's for raising a child. However, Mother, not Father, was Jason's custodian. Therefore, the fact that the court found Father's living environment was now superior to Mother's does not provide a basis for finding a change in circumstances, for the change in circumstances must concern Mother's circumstances, not those of Father, who was not Jason's custodial parent. *Id.*

■ This does not mean that Father's improved home environment is not relevant. The superior ability of the non-custodial parent to provide for the child is a consideration in determining the best interests of the child. *McCreary,* 954 S.W.2d at 440; *Lisec v. Coy,* 793 S.W.2d 173, 177 (Mo.App.1990). Father's ability to provide Jason with a better environ-

ment may thus be considered by the trial judge as part of the "best interests" determination, but only if the court first finds a substantial and continuing change in the circumstances of Jason or his custodian, that is, Mother. *McCreary*, 954 S.W.2d at 445.

The trial court also stated that Jason's request to live with his Father constituted a substantial and continuing change in circumstances. However, as we recently held in *Reeves–Weible v. Reeves*, 995 S.W.2d 50 (Mo.App. W.D.1999), the preference of a child as to his or her custodian is not in itself a substantial and continuing change of circumstances sufficient to justify modification of custody. Instead, the wishes of the child regarding custody, like a change in the non-custodial parent's situation, are to be taken into consideration in determining the best interests of the child after the court has determined that changed circumstances exist. *Id.; Basler v. Basler*, 892 S.W.2d 749, 753 (Mo.App.1994). Similarly, the fact that Jason had increased in age since the original determination of custody is not a sufficient basis for finding a change in circumstances. *See Betterton v. Betterton*, 752 S.W.2d 417, 419 (Mo.App.1988).

Of course, if the underlying reason the child wishes to change custodians itself constitutes a substantial change in the circumstance of the child, or of his or her custodian, that underlying reason could provide a basis for finding a change of circumstances. *Reeves–Weible*, 995 S.W.2d at 62. Here, however, Jason did not even testify at all, much less explain why he wanted to live with Father. Even were we to consider the testimony of Father and of Jason's older brother, Anthony, on this issue as an expression of Jason's wishes, it shows only that, after spending a fun and happy six-week summer vacation with his Father, Jason had expressed a desire to live with Father and did not want to return to New York to live with Mother. Although Father testified that Mother does not provide a nurturing

environment, and that Jason fears Mother's "repercussions" in that Mother "grounds" Jason and disciplines him, he does not allege this is a change from her prior disciplinary approach, nor does he cite any cases holding that the fact that Mother is a more strict disciplinarian provides a basis for finding a substantial change of circumstances.

Therefore, this part of the record only shows, at best, that Jason preferred Father's disciplinary practices and so preferred to live with Father. Because the preference of a child is entitled to little weight in this aspect of a modification proceeding, to the extent the trial court relied on Jason's preferences in making its required statutory determination of a change in circumstances requiring modification of custody, the trial court erred. *See Basler*, 892 S.W.2d at 752–53; *Betterton*, 752 S.W.2d at 419–20.

Father asserts, however, that even if the two reasons given by the trial court for changing custody are not valid ones, the court must have relied on other, unstated reasons too, since its order said its reasons for the change of custody "include but are not limited to" the two factors mentioned. Father asserts that when no findings of fact or conclusions of law are requested or made, all fact issues are deemed to be found in accordance with the result reached by the trial court. *Ellis v. Ellis*, 747 S.W.2d 711, 714 (Mo.App.1988).

We cannot read the phrase "included but not limited to" in a vacuum. The two factors the court indicated it principally found supported the existence of a substantial change of circumstances are not relevant to that issue, but instead go to the best interests issue. The court's decision suggests it considered the bases argued for a change of circumstances cumulatively in reaching its decision that a substantial change of circumstances existed, and we cannot determine from the record that the trial court would have found the record sufficient to justify a change of custody in

the absence of the two factors the judge specifically set out in his decision.

 Nonetheless, we agree with Father that he has identified facts in the record which raise issues which were relevant to a determination of whether a substantial change of circumstances existed, but which the trial court did not mention in its opinion. Specifically, Father also alleged a substantial change of circumstance in that Father is relocating to Rogers, Arkansas and Jason approves of the proposed relocation, including where he would attend school. Generally, the residential change of either parent to another state constitutes a change of circumstances under Section 452.410. Sec. 452.411 RSMo Cum.Supp.1998. However, at the time of the hearing, Father had not actually moved to Arkansas. A court may modify child custody only upon the showing of changed circumstances which have arisen since the prior decree or which existed at the time of the decree but were unknown or concealed from the court. *Rice v. Shepard,* 877 S.W.2d 229, 231–32 (Mo.App. 1994), *citing, Eatherton v. Eatherton,* 725 S.W.2d 125, 128 (Mo.App.1987). Thus, if an event has not yet occurred, the court lacks jurisdiction to alter the decree on that basis, *Id.,* and here the trial court did not list the planned move as a basis for its order. Therefore, it would appear from the record that the trial court may not have addressed this issue since it was still speculative at the time of the hearing.

 Of course, even if the move had occurred a few weeks earlier, the mere fact of a move by Father, even had it occurred prior to the hearing, would not automatically provide a basis for changing custody. *Rice,* 877 S.W.2d at 231–32. The court must also find that a change of custody is in the child's best interests. Here, the move from Missouri to Arkansas would have little effect on the parties' relationship with each other or with the children, since Mother lives in New York. We also note that the trial court seemed to be more concerned about Father's marital status than about whether he would move, and went so far as to direct him to marry within a certain time if he was given custody. Such an order is not appropriate.[1]

Father also argues here that the record contained evidence not mentioned by the court in its order which did in fact affect Mother's adequacy as a custodian and which constituted a substantial change in her circumstances, and that he had argued below that the court should find a substantial change of circumstances based on those facts. More specifically, he suggested that Mother has remarried and Jason does not get along with her husband. He also suggested that Mother exaggerated Jason's special educational needs and never sent him any information about them.

On the other hand, Mother put on evidence that Jason and his stepfather get along well and the stepfather is very involved in his life. Moreover, Mother states that Jason and his older brother Zachary, who remains in Mother's custody in New York, are good companions and should not be separated. Finally, Mother

---

1. The transcript reveals that, at the close of the hearing, the judge stated:

 If I order that custody is transferred to [Father], I understand what you're saying for tax reasons, but as far as I'm concerned, you get married to that woman [or] you don't live [with] the woman – one of the two. But, your case is different, you've been married to her, but that still doesn't make it right as far as I'm concerned.... But, this is August of '98, if I were to grant you custody, I'm going to order that you marry that woman within ten days after January 1, if I give you custody. Do you understand? ... Well, I'm just telling you, I don't like either parent living – and there's been testimony in this case that both of you have lived without benefit of marriage in front of your children....

 To the extent the trial court appeared to condition Father's grant of custody upon his promise to marry his fiancée within ten days of the beginning of the year 1999, rather than on the best interests of Jason in light of all the circumstances, it erred. The judge had no authority to order Father to marry his fiancée by a certain date.

testified that Father refused to talk with her about Jason's medical condition and special educational needs and had refused to get involved in those issues. Father confirmed that he did not know whether Jason actually had any medical conditions or learning disabilities which would require him to obtain special education and counseling, and said that he mainly thought Jason needed a loving environment, but he was willing to look into the issue.

Given this conflict in testimony, it was incumbent on the trial judge to determine whether Jason got along with his stepfather and whether he had special educational and health needs which affected his well-being. If not, then serious questions would exist as to whether a substantial change in Jason's or his Mother's circumstances had occurred and as to whether it would be in Jason's best interests to be left in Mother's custody if, as Father suggests, she is greatly exaggerating his medical or educational needs. However, if Jason in fact does have special educational or medical needs which Father does not take sufficiently seriously, then equally strong concerns would exist as to whether it is in his best interests to be placed with Father. We cannot determine from the record whether the trial court considered or how it weighed or resolved these issues, which were essential to the determination both of whether a substantial change in circumstances existed and of whether it would be in Jason's best interests to change custody. For these reasons, and because the two reasons given by the judge below for changing custody do not constitute a substantial change of circumstances, we reverse and remand this case to the trial court for further proceedings consistent with this opinion.

Judges VICTOR C. HOWARD and THOMAS H. NEWTON concur.