In re the MARRIAGE OF Wanda Sue EIKERMANN and Leland Oscar Eikermann, Jr.

Wanda Sue (Eikermann) Holland, Petitioner–Appellant,

v.

Leland Oscar Eikermann, Jr., Respondent–Respondent,

v.

State of Missouri, acting through Department of Social Services, Division of Child Support Enforcement, Respondent.

No. 23529.

Missouri Court of Appeals, Southern District, Division Two.

April 27, 2001.

Motion for Rehearing or Transfer Denied May 18, 2001.

Catherine L. Lange, C. William Lange and Lance P. Ferguson, Cuba, for Appellant.

James A. Broshot and Charles R. Leick, Steelville, for Respondent.

GARRISON, Judge.

This is an appeal by Wanda Sue (Eikermann) Holland ("Mother") from a judgment modifying the custody provisions of an earlier judgment dissolving her marriage to Leland Oscar Eikermann, Jr. ("Father"). On this appeal, Mother contends that the trial court erred in awarding primary physical custody of their son, L.E.E., to Father, and in failing to award her attorney's fees.

The marriage of Mother and Father was dissolved in September 1990. In that judgment, the court awarded joint legal custody of L.E.E., born, July 30, 1987, Mother was awarded primary physical custody with Father to have specific visitation privileges, and Father was ordered to pay $70 per week as child support. Both parties subsequently remarried. In November 1998, the Department of Social Services, Division of Child Support Enforcement commenced an administrative proceeding against Father, at the request of Mother, seeking to modify his child support. As a response to that action, Father filed the instant motion to modify seeking primary physical custody of L.E.E. in December 1998. He alleged that since the entry of the dissolution decree, there had been a "change in circumstances so substantial and continuing as to make the terms of said Decree unreasonable in regard to the child and in regard to the parties." Those changes of circumstances were alleged to be: (a) L.E.E. is older; (b) L.E.E. had expressed his desire to live with Father; (c) both parties were residing in the Bourbon, Missouri area when their marriage was dissolved, but Mother changed her residence to Cuba, Missouri area, and L.E.E. is enrolled in the Crawford County R–11 School District in Cuba; (d) Father had maintained a stable residence since the date of the dissolution decree; (e) Mother had changed her residence repeatedly since the entry of the dissolution decree; (f) Mother had not provided a stable home environment for L.E.E.; and

(g) Mother relocated the child's residence without giving him prior written notice as required by § 452.377. Father also filed a motion to stay the administrative proceedings concerning child support, which was granted, by the trial court.

Mother denied that there had been a continuing and substantial change of circumstances, but admitted that L.E.E. had expressed some desire to live with Father in the past. In the prayer of her answer, she requested that the motion to modify be dismissed, and that Father be ordered to pay a reasonable sum as her attorney's fees. Mother testified that since the dissolution, both parties had moved from Bourbon, Missouri, which is in Crawford County. She said, however, that while she had lived in seven different residences since the dissolution, all of them had been in Crawford County. Father was then living in Sullivan, Franklin County, Missouri.

The trial court entered a judgment modifying the earlier decree. It held:

> That there has been a substantial and continuing change of circumstances regarding the custody and visitation of the minor child so as to make this Court's previous Order unreasonable and contrary to the best interests of the minor child. Said changes include [Mother's] frequent change of residences, the minor child's age and need for stronger guidance from his father, which he is not currently receiving from [Mother] and the minor child's expressed desire to reside with [Father].

It then awarded Father primary physical custody, subject to Mother's specific rights of visitation, and found that such custody arrangement was in the child's best inter-

est. It also ordered Mother to pay child support of $134 per month.[1] This appeal followed.

■ Our review of a judgment modifying child custody is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).[2] *Reeves–Weible v. Reeves*, 995 S.W.2d 50, 55 (Mo.App. W.D.1999). We will, therefore, affirm the judgment so long as it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. *Id.* When there is conflicting evidence, the trial court has the discretion to determine the credibility of witnesses, and may accept or reject all, part or none of the testimony it hears. *Id.* Greater deference is given to the determination of the trial court in child custody matters than in other cases. *Brown v. Brown*, 19 S.W.3d 717, 720 (Mo.App. W.D.2000). A great deal of caution should be exercised in considering whether a judgment should be set aside on the ground that it is against the weight of the evidence, and only then upon the firm belief that it was wrong. *Reeves–Weible*, 995 S.W.2d at 56.

■ Modification of child custody decrees is governed by § 452.410.[3] Section 452.410.1 provides that a court with jurisdiction may modify a prior custody decree, if it finds, "upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child." Under this statute, a finding of a change in circumstances making the prior decree unreasonable is a precursor to a

1. The child support award is not challenged on this appeal.

2. *Murphy* interpreted the provisions of Rule 73.01. The provisions of that earlier rule are

now found, in essentially the same form, in Rule 84.13(d).

3. All references to statutes are to RSMo 2000 unless otherwise indicated.

finding that the best interests of the child necessitate modification. *Tilley v. Tilley,* 968 S.W.2d 208, 212 (Mo.App. S.D.1998); *McCreary v. McCreary,* 954 S.W.2d 433, 439 (Mo.App. W.D.1997). The issue of the child's best interests is not reached unless and until there is a sufficient showing of a change of circumstances. *McCreary,* 954 S.W.2d at 440. The necessary change in circumstances under § 452.410.1 must relate to the circumstances of the child or his custodian, not the noncustodial parent. *Id.* at 439. If the evidence and testimony wholly fail to demonstrate a change in circumstances, there can be no change of custody. *Id.*

In her first point on this appeal, Mother contends that the trial court erred in awarding Father primary physical custody of L.E.E. In support, she argues that he failed to demonstrate a change of circumstances of Mother or L.E.E., and that the factors cited by the court "went only to best interests of the child or did not effect [sic] child." [4]

 There is a presumption that the party awarded custody in the original decree is a suitable custodial parent, and the party seeking a change of custody has the burden of proving a change in circumstances requiring modification. *Reeves–Weible,* 995 S.W.2d at 56. Mother argues that the change of circumstances necessary to modify a custody award must be "substantial" and "continuing," citing cases such as *Johnson v. Lewis,* 12 S.W.3d 379, 383–84 (Mo.App. W.D.2000); *Reeves–Wei-*

*ble,* 995 S.W.2d at 56; *McCreary,* 954 S.W.2d at 439–40; *Ijames v. Ijames,* 909 S.W.2d 378, 380 (Mo.App. S.D.1995). *See also McCubbin v. Taylor,* 5 S.W.3d 202, 206–07 (Mo.App. W.D.1999); *Haus–Gillespie v. Gillespie,* 998 S.W.2d 842, 846 (Mo. App. W.D.1999); *Tilley,* 968 S.W.2d at 211. In *Searcy v. Seedorff,* 8 S.W.3d 113, 117 (Mo. banc 1999), the Missouri Supreme Court said that under the "plain language" of § 452.410.1, a moving party seeking to modify a custody order must first establish that a "substantial 'change of circumstances of the child or his custodian' has occurred." Father cites *In re C.N.H.,* 998 S.W.2d 553, 556–57 (Mo.App. S.D.1999), citing *Friend v. Jackson,* 714 S.W.2d 953, 955 (Mo.App. S.D.1986), which notes that § 452.410.1, authorizing a modification of a custody award, does not specifically require a change of circumstances which is "substantial and continuing." We are, however, constitutionally bound to follow the latest Missouri Supreme Court decision. *State ex rel. FAG Bearings Corp. v. Perigo,* 8 S.W.3d 118, 123 (Mo.App. S.D. 1999). Accordingly, we are required to follow the line of cases applying the "substantial" component to the requirement of a change of circumstances in a modification of custody case. This is in keeping with the cases holding that the change of circumstances must be significant before a child custody decree may be modified. *McCreary,* 954 S.W.2d at 439.

 As indicated earlier, the change in circumstances required under

---

[4.] Father appropriately points out that this and Mother's other point relied on fail to comply with the requirements of Rule 84.04(d), Missouri Rules of Civil Procedure (2000). While we do not overlook or condone the deficiencies in Mother's brief, we are desirous of deciding cases, especially those pertaining to child custody on the merits where possible and will do so in this case. *See In re K.L.C.,* 9 S.W.3d 768, 770 (Mo.App. S.D.

2000). In doing so, we discern no prejudice to Father, who has responded to the matters presented in the argument sections of Mother's brief. Father's motion to strike Mother's brief is denied, except that portion requesting that attachments to the brief which were not part of the record in the trial court be stricken, which is sustained. Mother's motion to amend her brief is denied.

§ 452.410.1 must relate to the circumstances of the child or their custodian, and not the noncustodial parent. Those changes of circumstances, in order, to justify a change of custody, must be of a significant nature, directly affecting the welfare of the child. *Johnson*, 12 S.W.3d at 383. Said another way, "[t]he change must be of a nature that the child will substantially benefit from the transfer and the welfare of the child requires it, ... in that children should not be moved from one environment to another upon slight changes of the status of the parents, ... inasmuch as there is much value in allowing children to remain with the custodial parent as opposed to uprooting them from familiar surroundings and moving them to a different home." *Reeves–Weible*, 995 S.W.2d at 57. *See also Ijames*, 909 S.W.2d at 380 ("The change in circumstances must be such as to give definite promise that the custody change will substantially benefit the child.") Not every change in the life of a child *or his or her custodian* is enough to trigger a modification of custody. *Reeves–Weible*, 995 S.W.2d at 57.

In this case, the trial court found that there had been a substantial and continuing change of circumstances so as to make the prior order unreasonable and contrary to L.E.E.'s best interests. It then described those changes as including "[Mother's] frequent change of residences, the minor child's age and need for stronger guidance from his father, which he is not currently receiving from [Mother] and the minor child's expressed desire to reside with [Father]." We will discuss these findings individually.

▉ While Mother had admittedly moved several times, it was always to upgrade her home, and was always in the same county. In fact, the moves never resulted in L.E.E. changing schools. The only party who had moved out of the county was Father.

It has been held that a change of residence alone does not require a change of custody. *Reeves–Weible*, 995 S.W.2d at 60. Even much more significant changes of residence have been found to be insufficient to support a modification of custody. In *McCubbin*, 5 S.W.3d at 207–08, the mother's move with the child from Jefferson City, Missouri to Poplar Bluff, Missouri, a distance of 250 miles, was found not to be such a significant change of circumstance as to require a change of custody. Even more to the point is *In re Marriage of Thompson*, 682 S.W.2d 849, 851 (Mo.App. S.D.1984), where this court found that a move of thirty-five miles (from Eminence to Mountain View, Missouri) did not require a change of custody.

In *Mobley v. Phillips*, 942 S.W.2d 399, 403 (Mo.App. W.D.1997), the appellate court held that a mother's five moves within a forty mile radius of the father's home, which did not interfere with his visitation, did not constitute a significant change of circumstances justifying modification, even though two of the moves required school changes. To the same effect is *Basler v. Basler*, 892 S.W.2d 749, 750–51 (Mo.App. E.D.1994); *Shoemaker v. Shoemaker*, 812 S.W.2d 250, 254 (Mo.App. W.D.1991).

The evidence in this case also demonstrated that L.E.E. had gone to school continuously in the same school district and had developed friends and participated in activities there. None of Mother's moves affected the school he attended, or were shown to have had an adverse effect on him. Conversely, the evidence indicated that Father had moved to a different community, which would require L.E.E. to change schools if custody was changed. While Father said that he was planning to move back to property he owned in Bourbon, Missouri, the evidence indicated that

the house on that property was located in a different school district, with the result that if L.E.E. lived there, he would also be required to attend a different school unless special permission could be obtained from the adjoining school district, which he had been attending, and tuition was paid. There was nothing in the evidence indicating that such a result was assured.

We are directed to no evidence in the record, and our own review has revealed none, which indicates that Mother's changes of residence, although several in number, would justify a change in custody.

Another of the circumstances relied on by the trial court was L.E.E.'s increased age. He was three years old when the original decree was entered, and twelve when the court modified the custody. An increase in age since the original custody determination, however, is not, in and of itself, a sufficient basis for finding a change of circumstances upon which to base a change of custody. *Johnson,* 12 S.W.3d at 384. *See also Ijames,* 909 S.W.2d at 380; *Betterton v. Betterton,* 752 S.W.2d 417, 419 (Mo.App. W.D.1988); *In re Marriage of Thompson,* 682 S.W.2d at 851.

Here, in changing custody, the trial court tied the child's increased age with his "need for stronger guidance from his father." In support, Father testified that "I think he needs his father as a father figure to teach him how to be a young man." He explained what he meant by saying:

> He can go with me and do some of the projects that I do for my family, working on their houses, going fishing, working on our cars—he always helps me work on the cars and stuff when he's there. Teach him how to handle financial situation, have livestock. Just teach him responsibility. I feel he does lack a little bit in responsibility.

Father explained L.E.E.'s lack of responsibility by saying, "He has things he's supposed to do, picking up clothes and little things like that, doing homework, that he can't do unless he's made to do. He needs a little work in those areas." When asked if Mother couldn't teach L.E.E. those responsibilities, Father said, "I don't know that." Father, however, said that he leaves for work at his job in construction at 5:30 a.m. and returns at 5:00 p.m., and does the things he says L.E.E. needs on the weekends when they're together. Father also said, that "his mother's had him for twelve years. I feel it's only fair that I get a small portion of his life." He added, "I would like to have some influence over his life, other than what little limited influence I get. When he was a young boy he should have been with his mother, when he was an infant. But as he gets older and lives his teenage years, he needs influence from me and guidance from me." Father contended that he thought that L.E.E. "decides a lot what he does" and that Mother goes along with it; and that he (Father) can provide more discipline. Father admitted, however that he was not saying that Mother is a "bad mother." Taken as a whole, this testimony does not demonstrate a change of circumstances with regard to Mother or L.E.E. which would support a change of custody.

Additionally, we note that there was evidence that L.E.E. is a very responsible child for his age. There was nothing in the evidence indicating that his failure to always pick up his clothes, or consistently complete his homework when it should be done was anything other than the behavior of a normal twelve-year-old. There was no indication that those areas of apparent concern to Father resulted from any lack of attention, or deficiency in supervision or guidance, by Mother. In fact, L.E.E. had been recognized several times by receiving

awards, recommended by his teachers, for demonstrating responsibility and possessing good character traits. The evidence also indicated that Mother disciplined L.E.E. in much the same way as does Father. Both obviously recognize the need for discipline and responsibility in L.E.E.'s life, and have demonstrated the desire and ability to provide that guidance. The evidence did not indicate a change of circumstances on the part of Mother or L.E.E. with regard to discipline, guidance or responsibility so that L.E.E.'s best interests required the change.

■ The trial court also relied on "the minor child's expressed desire to reside with [Father]" in ordering the change in custody. There was no direct evidence in the record concerning L.E.E.'s desires about who he wished to live with, other than the testimony of Mother and Father concerning his statements. Mother freely admitted that L.E.E. had, on a few occasions, said that he would like to live with Father. Father also testified that his son had made similar statements on three occasions, but Father also said that the last time L.E.E. talked about it, he said, "he didn't care where he lived." Other statements attributed to L.E.E. indicated that, understandably, he loved both his parents, and there were reasons he would want to live with each of them.

■ Cases dealing with the issue of a child's preference as to his custodian indicate that modification of custody should not turn on the desire of a child about who should be his or her custodian, and that such preference alone is not a sufficient change of circumstances to justify such a modification. *Reeves–Weible,* 995 S.W.2d at 62. *See also Tilley,* 968 S.W.2d at 213. *In re Marriage of Thompson,* 682 S.W.2d at 851. In *Johnson,* 12 S.W.3d at 384, the court said that the wishes of the child regarding custody, like a change in the

noncustodial parent's situation, are to be taken into consideration in determining the best interests of the child after the court has determined that changed circumstances exist. Accordingly, in this case, the evidence that L.E.E. had occasionally voiced a desire to live with Father does not demonstrate a change of circumstances authorizing a change of custody, and is, in itself, insufficient to support such a change.

The evidence, taken as a whole, does not support a conclusion that there was a sufficient change of circumstances of Mother or L.E.E. to support a change of custody. The trial court's conclusion to the contrary constituted an erroneous application of the law, and was against the weight of the evidence. With regard to our latter conclusion, we are firmly convinced that the judgment modifying custody here was wrong. For those reasons, we are compelled to reverse the judgment granting physical custody to Father. In doing so, we acknowledge that it is unfortunate that primary physical custody of L.E.E. has been awarded to Father, and now must be returned to Mother. We are constrained, however, to apply the law as demonstrated by reported cases to the facts as they appear in this record. In doing so, we do not mean to ignore or minimize the obvious good faith desires of Father to have custody of his son.

■ In her other point on appeal, Mother contends that the trial court abused its discretion in not awarding her attorney's fees. In response to the trial court's finding that she was not entitled to attorney's fees, she contends that she introduced evidence of the attorney's fees and costs she had incurred, Father had a baseless claim for modification, and he also had a greater ability to pay her fees.

 The award of attorney's fees is governed by § 452.355.1. That statute provides, in pertinent part:

1. Unless otherwise indicated, the court from time to time after considering all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding pursuant to sections 452.300 to 452.415 and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding and after entry of a final judgment....

Review of the granting of or refusal to grant attorney's fees is for abuse of discretion. *Stufflebean v. Stufflebean*, 941 S.W.2d 844, 847 (Mo.App. W.D.1997). To show an abuse of discretion, the complaining party bears the burden of showing that the trial court's judgment is clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice. *In re Marriage of Trimble*, 978 S.W.2d 55, 58 (Mo.App. S.D.1998). Exactly how relevant factors balance with regard to a request for attorney's fees varies from case to case. *Id.* at 59. One spouse's greater ability to pay is sufficient, however, to support an award of attorney's fees to the other spouse. *Stufflebean*, 941 S.W.2d at 847.

In this case, the trial court made findings concerning the incomes of both parties in connection with its consideration of Father's request for child support from Mother in the event he was awarded custody. It found that father had a gross monthly income of $5,165. In fact, Father introduced a "Statement of Income and Expenses" showing that he had a gross monthly income of $5,890, and the Division of Child Support Enforcement furnished Mother the figure of $5,922 for Father's gross income. Father's income tax return for 1998, however, was consistent with the figure found by the trial court. The trial court also found that Mother had a gross monthly income of $1,968. The evidence, therefore, indicated that Father had an income of almost three times that of Mother.

 According to Mother's testimony, she had incurred attorney's fees of $2,410 plus expenses of $231.20 (for the taking of Father's deposition) up to the day of trial. She also testified that she did not have the funds to employ her attorney, and had borrowed $2,500 from her parents to pay as a retainer. The evidence, therefore, indicated that Father had greater financial resources than Mother. Based on our discussion concerning the first point, it is also apparent that the merits of Father's motion to modify were lacking. These factors, together with the fact that Father's motion to modify was precipitated by the Division of Child Support Enforcement's efforts to increase his child support, lead us to the conclusion that the trial court's denial of Mother's request for a judgment for attorney's fees was an abuse of discretion. That portion of the judgment is also reversed.[5]

5. Mother requests, in the argument section of her brief, that we award her attorney's fees and expenses incurred post-judgment. This issue, however, is not raised in the point relied on. The issues for resolution on appeal are those stated in the points relied on, and a question not there presented will be considered abandoned. *Greene County Concerned Citizens v. Bd. of Zoning Adjustment*, 873 S.W.2d 246, 255 (Mo.App. S.D.1994). Even more importantly, this court has no jurisdiction to award attorney's fees under § 442.355,

The judgment is reversed and the case is remanded to the trial court for entry of a judgment denying Father's motion to modify. On remand the trial court is directed to enter judgment against Father for those attorney's fees and expenses incurred by Mother which it finds reasonable pursuant to § 452.355.1.

PREWITT, J., and BARNEY, C.J., concur.

since the only court that can award such fees is the circuit court, whether the case is pending there or in the appellate court. *Clarke v. Clarke*, 983 S.W.2d 192, 195 (Mo.App. E.D. 1998); *In re Marriage of Brooke*, 773 S.W.2d 496, 499 (Mo.App. S.D.1989).