

# In the Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| GALE W. BLOMENKAMP, | ) | |
| Appellant, | ) | |
| v. | ) | WD77040 |
| | ) | |
| POLLY A. BLOMENKAMP, | ) | FILED: April 28, 2015 |
| Respondent. | ) | |

## APPEAL FROM THE CIRCUIT COURT OF BOONE COUNTY
### THE HONORABLE ROBERT R. STERNER, JUDGE

### BEFORE DIVISION ONE: THOMAS H. NEWTON, PRESIDING JUDGE,
### LISA WHITE HARDWICK AND ANTHONY REX GABBERT

Gale Blomenkamp (Father) appeals from a judgment granting Polly Blomenkamp's (Mother) motion for modification of child support and child custody. Father contends the circuit court erred in: (1) finding a change of circumstances to support the child support modification; (2) calculating the amount of child support; and (3) finding the statutory requirements were met to justify a change of custody. For reasons explained herein, we find no error and affirm the judgment.

### FACTUAL AND PROCEDURAL HISTORY

Gale Blomenkamp and Polly Blomenkamp were divorced on December 22, 2005. The dissolution judgment awarded the parties joint physical and legal custody of their two children, Krista and Bo, who were eleven years old and six

years old respectively at the time of the divorce. The court approved a parenting plan whereby the parties agreed to alternate physical custody of the children every other week and neither party paid child support. This custody arrangement continued until late November 2011, when Krista moved in with Mother on a full-time basis. At that time, Krista was seventeen years old and had become dissatisfied that Father did not treat her more like an adult. Bo continued to spend alternate weeks at both parents' homes after Krista moved in with Mother.

On February 17, 2012, Mother filed a Motion to Modify the Dissolution Judgment, in which she sought sole physical custody of Krista, an award of child support, and an order requiring the parties to proportionately share the children's college expenses. After a hearing in January 2013, the court granted the motion. The court found a change of circumstances had occurred because the "*de facto* move by Krista is evidence of a voluntary relinquishment of custody by Father." The court made the following findings in awarding Mother sole physical custody of Krista:

> The Court finds there has been a change in the circumstances of Krista Blomenkamp and of Mother since the decree of dissolution of marriage, and that modification of the decree to change physical custody from joint to sole in Mother is necessary to serve the best interests of the child. To fail to recognize that the 18-year-old daughter has not stayed overnight with her father's family more than occasionally for well over a year, has no intention of living in her father's household, graduates high school in the spring of 2013, plans to undergo Marine basic training and become a U.S. Marine reserve, and is to become a University of Missouri student when her Marine training and scholarship opportunity allow is to perpetuate a fiction of joint physical custody of this child which the Blomenkamps have long since left behind.

2

The modification judgment also ordered child support as follows:

> [Father] is ordered to pay as child support one-third of the cost of post-secondary education costs and the amount of $786 per month for so long as he is obligated to pay support for both children, of which $573 is for Krista and $213 is for Bo; and [Father] is ordered to pay as child support one-third of the cost of post-secondary education costs and the amount of $213 for so long as he is obligated to pay support for Bo only.

Father appeals the custody and child support award in the judgment of modification.

## STANDARD OF REVIEW

Our review of a modification of dissolution of marriage decree is limited to determining whether the judgment is supported by substantial evidence, whether it is against the weight of the evidence, or whether it erroneously declares or applies the law. *Selby v. Smith*, 193 S.W.3d 819, 824 (Mo. App. 2006). In applying this standard, we view the evidence in the light most favorable to the judgment, disregarding all contrary evidence and giving deference to the trial court's determinations of credibility. *Mehra v. Mehra*, 819 S.W.2d 351, 353 (Mo. banc 1991). The determination to award a modification in child support lies within the discretion of the trial court, whose decision will be reversed "only for abuse of discretion or misapplication of the law." *Smith*, 193 S.W.3d at 824. Giving similar deference, we will not set aside a trial court's judgment on child custody unless we firmly believe that the decree is wrong and that the child's welfare requires another disposition. *Hermann v. Heskett,* 403 S.W.3d 136, 140 (Mo.App. 2013).

3

**Modification of Child Support**

In Point I, Father contends the circuit court erred in awarding child support in the modification judgment because Mother failed to meet the statutory requirement of proving a change of circumstances "so substantial and continuing as to make the terms [of the original judgment] unreasonable." § 452.370.1, RSMo.[1] Specifically, Father argues that Mother failed to produce any evidence to show how her income or expenses have changed since the entering of the original decree in 2005. In response, Mother asserts there was evidence of changed circumstances in that: (1) both parties shared physical custody equally at the time of the 2005 dissolution, but now Krista lives with Mother on a full-time basis; and (2) the original divorce decree did not contemplate post-secondary education expenses, but Krista is now a high school senior with a bona fide intention to attend college.

"A change in the parties' financial circumstances or in the children's needs may evidence a showing of substantial and continuing change" as required by Section 452.370. *Eaton v. Bell*, 127 S.W.3d 690, 697 (Mo. App. 2004). "Increases in the cost of living, which occur with the growth and maturing of children, have been held to constitute substantial and continuing change allowing for modification in child support." *Buckman v. Buckman*, 857 S.W.2d 313, 318

---

[1] All statutory references are to the Revised Statutes of Missouri 2000, as updated by the 2013 Cumulative Supplement.

(Mo. App. 1993). Moreover, "[i]t has long been recognized that payment of college expenses can constitute a substantial change of circumstances." *Gordon v. Gordon*, 924 S.W.2d 529, 535 (Mo. App. 1996). In *Leahy v. Leahy*, 858 S.W.2d 221, 223 (Mo. banc 1993), the Missouri Supreme Court affirmed the trial court's finding of substantial change based, in part, on the fact that the child planned to attend college the following semester and such college expenses were unknown at the time of the prior order.

Here, Mother testified that Krista had received an acceptance letter from the University of Missouri with a prospective enrollment date for the Fall of 2013. Krista testified that she intended to enroll at that time. As in *Leahy*, the trial court found that Krista had "bona fide educational goals" and the prior dissolution decree made no mention of post-secondary educational expenses. The trial court also explicitly found that both Krista and Bo were of "appropriate" ages for the court's consideration of college expenses and that both parents had the ability to contribute to such expenses. *See DeCapo v. DeCapo*, 915 S.W.2d 343, 348 (Mo. App. 1996) (stating that "[t]he trial court is in the best position to determine the financial capability of a parent to assist in the support of the parent's child, including college expenses").

As the initial dissolution decree made no arrangement for the payment of post-secondary educational expenses, evidence of Krista's recent acceptance and intention to attend college was sufficient to establish substantial and continuing

5

changed circumstances to justify modification of the initial decree.[2]  Point I is denied.

In Point II, Father argues that the trial court erred in calculating the Form 14 presumed child support amount (PCSA) in three respects.  First, he argues that the trial court should have included $950 of monthly rental income in its Form 14 calculation of Mother's gross income.  Second, Father argues that the trial court erred in awarding him a 10% Line 11 adjustment for overnights spent with the children because he was entitled to a greater adjustment of 34% - 50%.  Third, Father contends the PCSA should have been rebutted based on his "non-duplicated, fixed expenses" for the children's extra-curricular activities.

Section 452.340 and Rule 88.01 mandate the use of Form 14 guidelines in determining child support.  *Woolridge v. Woolridge*, 915 S.W.2d 372, 378 (Mo. App. 1996).  The trial court must calculate the child support amount pursuant to Form 14, either by accepting one of the parties' proposed calculations, or by rejecting the parties proposed Form 14s and preparing its own.  *Douglas-Hill v. Hill*, 1 S.W.3d 613, 616 (Mo. App. 1999).  "There is a presumption that the amount of child support calculated pursuant to Form 14 is the amount of child support to be awarded."  *Id.*  The PCSA, however, may be rebutted if the trial court finds it to be unjust or inappropriate after considering all relevant circumstances.  *Id.*

---

[2] As discussed later under Point III, the *de facto* change of custody (which resulted from Krista moving in full-time with Mother) also provides evidence of a change of circumstances sufficient to justify modification of the prior decree.  However, we need not address it in the context of Point I.

Father notes that Mother receives $950 in monthly rental income from property she owns. He argues that the court erred in failing to include the rental proceeds in its Form 14 calculation of Mother's gross income. However, Father fails to acknowledge the evidence that Mother also pays $1,040 in monthly mortgage payments on the rental property. Father cites no authority for his contention that the $950 rental income must be included in the court's calculation under these circumstances. In light of the evidence that Mother's rental proceeds did not cover or exceed her mortgage expense on the property, the trial court did not abuse its discretion in excluding the proceeds from Mother's gross income on the Form 14 calculation.

Father also argues that the trial court erred in its calculation of the applicable adjustment for overnight stays under Line 11 of the Form 14. In calculating its original Form 14, the trial court took the average number of overnights that both children spent with him in the prior year — Krista had zero overnight stays with Father, and Bo spent 183 overnights with Father – such that the average of the two is 94 overnights. Thus, the court concluded that Father was entitled to a 10% overnight credit because he had fewer than 109 overnight visits with both of the children. The court then made a second Form 14 calculation (for the future) in which it gave Father a 34% overnight credit for Bo only. Father argues that the trial court erred in that it should have credited him with more than a 10% Line 11 adjustment in its Form 14 calculation for both children; he also contends that he

7

was entitled to a 50% Line 11 adjustment on the calculation of future support for Bo only.

To support this contention, Father relies on the Comments to Form 14, which allow for a Line 11 adjustment of up to 50% when a parent has been awarded more than 109 overnights per year. However, a 50% credit is not mandatory. The Directions for Use state that if the parent obligated to pay support has been awarded a period of overnight visitation of more than 109 days, "the adjustment for that parent *may* be greater than 10% up to a maximum of 50%." (Emphasis added). Given this language, our court has recognized that a trial court is not obligated to give the parent paying support an adjustment exceeding 10%. *Hatchette v. Hatchette*, 57 S.W.3d 884, 891 (Mo. App. 2001). Thus, even if Father's assertion is correct that the trial court's procedure in averaging the number of overnights of the two children is not sanctioned by Rule 88.01 or Form 14, he cannot show that the trial court abused its discretion because the court still awarded him the maximum credit that is *required* in any situation, which is a 10% Line 11 adjustment. Any greater amount is solely within the trial court's discretion.

Father also points to Comment (C)(3) on the Form 14, which states that the Line 11 adjustment may be rebutted if the parent obligated to pay support only exercises his overnight periods with some but not all of the children, "[w]ithout fault of the parent entitled to receive support." Father attempts to use this provision to argue that Mother was at fault for enticing to Krista to stay with her, but there is nothing in the record to support this assertion. Moreover, Comment

8

(C)(3) only applies in situations when the parent *receiving* support is attempting to rebut a Line 11 adjustment awarded to the obligor parent. *See Nevins v. Green*, 317 S.W.3d 691, 697 (Mo. App. 2010). Thus, Comment (C)(3) is inapposite, as Father did not receive a Line 11 adjustment, and Mother had nothing to rebut.

Finally, Father argues that the trial court should have rebutted the PCSA to account for the fact that Father incurred significant "non-duplicated, fixed expenses" for the children's extra-curricular activities. He acknowledges that some of these expenses are included in the PCSA pursuant to Assumption 12 of the Form 14, but he argues that Mother had fewer "non-duplicated, fixed expenses" than would be assumed. We note, however, that Father failed to meet his burden of showing that the changed custody arrangement would cause him to incur *additional expenses*, rendering the PCSA unjust or appropriate. *Conrad v. Conrad*, 76 S.W.3d 305, 313 (Mo. App. 2002) (child support obligor has burden of showing additional expenses to rebut PCSA). As Mother points out, the original dissolution decree is to remain in effect in all other respects, which requires both parents to share equally in extraordinary expenses of both children. These expenses include such things as music lessons, sports equipment, and car insurance—many expenses that Father claims are non-duplicated, fixed expenditures. Although Father adduced evidence of expenses relating to sports, clothing, lunches, and other extra-curricular activities for both children, Mother also adduced evidence of expenses she incurred regarding Krista's extra-curricular activities after Krista moved in full-time with Mother. Because Father did not carry

9

his burden of rebutting the PCSA by showing additional expenses, we cannot say that the trial court abused its discretion in calculating the Form 14.[3]

Point II is denied.

**Modification of Child Custody**

In Point III, Father contends the trial court erred in granting sole physical custody of Krista to Mother, because there was neither substantial evidence nor adequate findings to support modification of the original award of joint physical custody. Section 452.410.1 provides:

> [T]he court shall not modify a prior custody decree unless … it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child.

Based on these requirements for modifying a custody decree, Father argues that: (1) there was no evidence of a change in circumstances, and (2) the trial court failed to make findings on the best interest factors pursuant to Section 452.375.6.

In the modification judgment, the trial court made a specific finding that "there has been a change in the circumstances of [Krista and Mother] since the decree of dissolution of marriage, and the modification of the decree … is necessary to serve the best interests of the child." The court listed five reasons in

---

[3] Father also takes issue with the method in which the trial court stated that it was rebutting the PCSA as unjust and inappropriate for failure to take into account college expenses, yet ordered Father to pay the amounts listed as the PCSA. But as the trial court correctly noted, educational expenses can be included in the Form 14 calculation, or may be considered in rebutting the PCSA as unjust and inappropriate and adding the amount that each parent is to pay toward college expenses. *See DeCapo v. DeCapo*, 915 S.W.2d 343, 346–47 (Mo. App. 1996). The trial court did not err in choosing the second approved method.

10

support of this determination: (1) Krista has not stayed overnight with Father more than occasionally for well over a year; (2) Krista had no intention of living in Father's home; (3) Krista is expected to graduate high school the following spring; (4) Krista plans to become a U.S. Marine reserve; and (5) Krista plans to enroll at the University of Missouri.

Father argues that these reasons are insufficient to justify a change in circumstances because they primarily relate to Krista's preferences regarding her custodian.[4] Relying on *Johnson v. Lewis*, 12 S.W.3d 379, 384 (Mo. App. 2000), Father asserts that a finding of substantial change cannot be predicated solely on the wishes of the child.

In *Johnson*, the mother had sole physical custody of the parties' twelve-year-old son. *Id.* at 382. The father attempted to modify the custody order on the basis that the child had told him that he wanted to live with father. *Id.* The appeals court concluded there was no change of circumstances because the child had merely expressed a preference to live with father and that such preferences are "entitled to little weight." *Id.* at 384. The court noted that the child did not testify at trial to explain why he wanted to live with father. Although it did not find grounds for modification under the facts presented in *Johnson,* the court acknowledged that the reasons underlying a child's custodial preference "could

---

[4] Father also argues that reasons (3) through (5), as listed above, cannot serve as a basis for modification because they relate to future events. See *Johnson v. Lewis*, 12 S.W.3d 379, 385 (Mo. App. 2000) (court lacks jurisdiction to alter the decree based on events that have not yet occurred). However, even if we exclude these reasons, the fact that Krista had already moved in with Mother and Father did not seek her return is sufficient to demonstrate change in circumstances. Thus, we do not further address this argument.

11

provide a basis for finding a change of circumstances." *Id.* Thus, *Johnson* does not exclude the possibility that the trial court could consider Krista's wishes in determining whether a change of circumstances had occurred.

Here, Krista had already moved in with Mother on a full-time basis and did not stay overnight at Father's home during the year preceding the modification hearing. "This court has recognized that the [m]odification of a custody order is proper where the custodial parent ***allowed*** the child to stay with the noncustodial parent for an extended period of time ... and the child desired to remain with the noncustodial parent." *McCreary v. McCreary*, 954 S.W.2d 433, 446 (Mo. App. 1997). Moreover, in *Lee v. Lee*, 767 S.W.2d 373, 374–75 (Mo. App. 1989), this court found a "clear showing" of a significant change in circumstances when the children had been living by choice with the noncustodial parent for over a year and the custodial parent did not wish to attempt to force their return. Likewise, Father allowed Krista to stay with Mother for over a year and took no action to force her return. This situation differs significantly from *Johnson*, where the custodial parent had not allowed the twelve-year-old child to move-in full-time with the noncustodial parent.

Father also argues that the trial court erred in failing to make written findings on the specific best interest factors under Section 452.375.2, as required by Section 452.375.6. Father claims that the trial court's failure to detail the relevant factors requires reversal of the custody modification.

12

In general, when child custody is contested, written findings must be made in the judgment based on both the eight factors listed in Section 452.375.2[5] and the public policy contained in Section 452.375.4, detailing the specific relevant factors that made a particular arrangement in the child's best interests. *Alberswerth v. Alberswerth*, 184 S.W.3d 81, 90 (Mo. App. 2006); § 452.375.6. Such written findings are mandatory unless the parties have agreed to a custodial arrangement. *Buchanan v. Buchanan*, 167 S.W.3d 698, 702 (Mo. banc 2005). The purpose of such a requirement is to facilitate a more meaningful appellate review. *In re Marriage of Swallows*, 172 S.W.3d 912, 915 (Mo. App. 2005).

As noted, the trial court listed five reasons to support its determination that the change of custody was in Krista's best interest. These reasons do not precisely track the eight factors in Section 452.375.2, and Mother explains that

_____

[5] Section 452.375.2 provides that the court shall consider all relevant factors including:

(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

(5) The child's adjustment to the child's home, school, and community;

(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved . . . ;

(7) The intention of either parent to relocate the principal residence of the child; and

(8) The wishes of a child as to the child's custodian . . . .

many of the factors are not useful or relevant in considering the best interests of an eighteen-year-old who, for all practical purposes, is no longer a child. While acknowledging that Krista was eighteen years old at the time of the hearing, Father argues that she is still considered a "child" for whom written findings must be made. Father cites *Scruggs v. Scruggs*, 161 S.W.3d 383, 391 (Mo. App. 2005), wherein this court stated that the age of majority, for purposes of child support and custody, "is now age 18, not 21," unless certain exceptions apply.

Contrary to Father's argument, *Scruggs* does not provide guidance on whether the eight factor test should be used in determining whether a change of custody is in the best interests of an eighteen-year-old. *Scruggs* addressed the determination of the age at which a child should be considered emancipated—and, thus, no longer "eligible" for a custody or support determination. Moreover, in attempting to define the word "child," the *Scruggs* court acknowledged that the term "child," for purposes of custody orders, refers to a "minor dependent child." *Id.* (citing *Miner v. Miner*, 669 S.W.2d 628, 629 (Mo. App. 1984)).

A key provision of Missouri's dissolution law indicates that a child's eighteenth birthday does have significance apart from efforts to determine emancipation. On a motion to modify custody, under Section 452.310.8, both parties must submit a proposed parenting plan which "set[s] forth arrangements that the party believes to be in the best interest of the minor children." Notably, the statute further provides that "[t]he filing of a parenting plan for any child over the age of eighteen for whom custody, visitation, or support is being established or

14

modified … is *not* required."  § 452.310.11 (emphasis added).  The relaxation of this requirement strongly suggests that the standard considerations for the "best interests of the child" are not necessarily relevant for those who are eighteen and older.  *See Cannon v. Cannon*, 280 S.W.3d 79, 87 (Mo. banc 2009) (stating that "once they reach the age of majority, the limitations [placed on visitation rights of parents convicted of certain crimes] put in place to protect the children's best interests no longer will be relevant.").

Given Krista's age, the trial court's findings in this case are sufficient to support the determination that the custody change was in her best interests and to allow for meaningful appellate review.  The court's reasoning for the modification is both practical and sound, particularly in light of the fact that many of the best interest factors under Section 452.372 are not applicable to a "child" who is eighteen or older.  For example, the first factor listed in the statute is "[t]he wishes of the child's parents as to custody and *the proposed parenting plan* submitted by both parties."  § 452.375.2(1) (emphasis added).  As noted, a parenting plan is not required when the child is eighteen years old.  § 452.310.11.  Moreover, the fourth factor listed in the statute is "[w]hich parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent." § 452.375.2(4).  With regard to an eighteen-year-old, our court has recognized that the custodial parent will have little, if any, control over whether the child decides to have contact with the noncustodial parent.  *See Morton v. Myers*, 21 S.W.3d 99, 105 (Mo. App. 2000).  For the same reason, the trial court would not

15

be able to consider the public policy contained in Section 452.375.4, which requires the trial court to determine which custody arrangement will "assure both parents … have frequent, continuing and meaningful contact with their children…"

The trial court's judgment was supported by sufficient evidence to show a change of circumstances and proper findings to indicate that the change of custody was in Krista's best interests.  Accordingly, Point III is denied.

## CONCLUSION

We affirm the modification judgment.

LISA WHITE HARDWICK, JUDGE

ALL CONCUR.